EXHIBIT "A"

| RONALD GREEN AND<br>BETTY JEAN GREEN | : | IN THE COURT OF COMMON PLEAS<br>OF LACKAWANNA COUNTY |
|---|---|---|
| **Plaintiff** | : | **CIVIL ACTION – LAW** |
| v. | : | |
| STATE FARM MUTUAL<br>AUTOMOBILE INSURANCE<br>COMPANY | : | No. CV 20CV 2410 |
| **Defendant** | : | **JURY TRIAL DEMANDED** |

## NOTICE

    You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within 20 days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so, the case may proceed without you and the Court without further notice may enter a judgment against you for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

    YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP:

    IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

```
Lawyer Referral Service          Lawyer Referral Service
507 Linden Street                Lackawanna Bar Association
Third Floor                      338 North Washington Avenue
Scranton, PA  18503              Scranton, PA  18503-1502
(570) 342-0184                   (570)969-9600
```

| | | |
|---|---|---|
| RONALD GREEN AND<br>BETTY JEAN GREEN | : | IN THE COURT OF COMMON PLEAS<br>OF LACKAWANNA COUNTY |
| | : | |
| **Plaintiff** | : | CIVIL ACTION – LAW |
| | : | |
| v. | : | |
| | : | |
| STATE FARM MUTUAL | : | No. CV |
| AUTOMOBILE INSURANCE | : | |
| COMPANY | : | |
| **Defendant** | : | JURY TRIAL DEMANDED |

## COMPLAINT

AND NOW COME Plaintiffs, Ronald Green and Betty Jean Green, by and through their

counsel, Michael J. Pisanchyn, Jr., Esquire and the Pisanchyn Law Firm, and aver as follows:

1.   Plaintiff, Ronald Green, is a competent adult individual residing at 210 Division Street

     Throop PA 18447.

2.   Plaintiff, Betty Jean Green, is a competent adult individual residing at 210 Division Street

     Throop PA 18447.

3.   Plaintiffs, Ronald and Betty Jean are and were legally married at the time of this incident.

4.   Defendant, State Farm Mutual Automobile Insurance Company (throughout referenced as

     "Defendant Insurance"), is a corporation authorized to conduct business and issue

     policies of Insurance in the Commonwealth of Pennsylvania and regularly conducts

     business in Lackawanna, as well as all other Counties in Pennsylvania, with an address of

     One State Farm Plaza Bloomington IL 61710.

5.   On or about August 8, 2019, Plaintiff, Ronald Green was a pedestrian when he was

     violently struck by a vehicle.

6.   At all times material hereto, Plaintiff, was an insured under an automobile insurance

     policy with Defendant Insurance.

7.   A copy of the subject policy of insurance issued by Defendant Insurance is attached hereto as Exhibit A.

8.   At all times pertinent to this Complaint, the policy issued by Defendant Insurance was in full force and effect and provided underinsured motorist benefits.

9.   As a result of the aforesaid collision, Plaintiff, sustained injuries, including but not limited to leg, which further required surgery, resulting in effects, including but not limited to severe and constant pain.

10.  As a result of the aforesaid incident, Plaintiff, has been forced to undergo extensive medical treatment, and will/may be forced to undergo medical treatment for an undetermined time in the future.

11.  As a result of the aforesaid incident and injuries sustained, Plaintiff, has expended, yet expends, and will/may expend for an indefinite time in the future various and substantial sums of money for the medicine and medical attention in and about endeavoring to treat and cure Plaintiff, of his injuries all to his great financial loss and damage.

12.  As a result of the aforesaid incident and injuries sustained, Plaintiff, has suffered wage loss and/or loss of earning capacity and will suffer the same for an indefinite time in to the future.

## COUNT I-BREACH OF CONTRACT

13.  Plaintiff incorporates herein by reference the averments contained in Paragraphs one (1) through twelve (12) as well as the entire Complaint as though the same were set forth fully herein.

14.  When Defendant Insurance insured Plaintiff, a contract Defendant Insurance and Plaintiff was entered into wherein insurance premiums would be paid and Defendant Insurance would provide coverage as delineated in the Insurance Policy/Insurance Contract.

15.    Plaintiff has requested that Defendant Insurance provided a certified copy of the Insurance
       Policy.  A true and correct copy of the Insurance Policy has been attached hereto and made a
       part hereof as "Exhibit A".

16.    Plaintiff has fully complied with all of the terms, conditions and duties required under the
       policy including but not limited to filing suit against Defendant insurance company and along
       with the third party tortfeasor.

17.    It is believed and therefore averred that the third party tortfeasor is underinsured and as such,
       pursuant to the Insurance Contract between Plaintiff and Defendant Insurance, Defendant
       Insurance contractually owes Plaintiff damages for all injuries arising out of this motor
       vehicle collision.

18.    Defendant Insurance, has failed to offer prompt payment of the reasonable and fair value of
       the claim to Plaintiff.

19.    Defendant Insurance has failed to objectively, fairly, and reasonably investigate/evaluate
       Plaintiff's claim in as much as, but not limited to, a proper inquiry, which would have
       revealed that Plaintiff has sustained serious injuries and had to and will have to undergo
       serious medical procedures to help Plaintiff deal with the pain and injuries sustained in this
       motor vehicle collision.

20.    For the reasons set forth above, Defendant, Horace Mann, has violated its obligations under
       the policy of insurance and/or insurance regulations.

       **WHEREFORE,** Plaintiffs respectfully prays this Honorable Court grant judgment in their
favor and against the Defendant, in a sum in excess of **Fifty Thousand ($50,000.00) Dollars**
together with compensatory damages, interest, and such other relief as this Honorable Court
deems just and proper.

## COUNT II-BAD FAITH

21. Plaintiff incorporates herein by reference the averments contained in paragraphs one (1) through twenty (20) as well as the entire Complaint as though the same were set forth fully herein.

22. On or about August 8, 2019, Plaintiff, was a pedestrian that was violently struck by a vehcile.

23. On or about January 17, 2020 the Defendants vehicle insurance settled this matter with Plaintiff.

24. By letter dated September 9, 2019, Plaintiffs notified Defendant Insurance herein of a possible underinsured motorist claim.

25. Defendant Insurance had a duty to begin investigating Plaintiffs' underinsured motorist claim at least as of September 9, 2019.

26. On January 20, 2020, Plaintiffs forwarded to Defendant Insurance their formal demand letter setting forth the August 8, 2019 occurrence and resulting injuries and supporting documentation but not limited to medical records, photographs and authorizations that were requested by Defendant Insurance.

27. On or about April 14, 2020, Danielle Smith a State Farm Mutual Automobile Insurance Company underinsured adjuster admitted to reviewing the Plaintiffs 1st party pip file, without permission. Danielle Smith stated "there is no reason I can't look at these files." The conversation was memorialized via email the same day.

28. Additionally, Plaintiffs asked for a detailed log including but not limited to propriety of the representative's viewing of the MPC file and whether it is proper or not, where State Farm can access these files without their insured's permission, complete adjuster notes un-redacted, list of offers made and reasons for its offer and a list of all materials reviewed by State Farm for this claim.

29.  On or about April 15, 2020, correspondence was received from Danielle Smith on State Farm letterhead acknowledging the April 14, 2020 email correspondence.

30.  On or about April 16, 2020 Defendant Insurance retained counsel and it was relayed that the documents that were reviewed by adjuster would be sent to Plaintiffs' counsel for proper review.  As of today's filing, this has not been completed.

31.  When Defendant Insurance insured Plaintiff a contract between the Insurance Company was entered into wherein insurance premiums would be paid and Insurance Company would provide coverage as delineated in the Insurance policy/insurance contract.

32.  Plaintiff believes and therefore aver that Defendant, Insurance Company is in possession of complete insurance contract(s) applicable at the time of the aforementioned incident.

33.  The Insurance Policies/Contract(s) are attached as if they were set forth in full at the end of this complaint. See contract attached as Exhibit "A."

34.  The Plaintiffs have fully complied with all of the terms, conditions and duties required under the policy.

35.  Defendants failed to promptly offer payment of the reasonable and fair value of the claim to the Plaintiffs.

36.  Defendants failed to objectively, fairly, and reasonably investigate/evaluate Plaintiffs' claim in as much as but not limited to a proper inquiry would have revealed that Plaintiff, sustained serious injuries to numerous body parts, and had to, will have to, and/or may have to undergo serious medical treatment, to help him deal with pain and injuries sustained in this incident.

37.  Defendant, after being advised of the underinsured motorist claim, requested its insured sign and/or amend certain documents in regard to the subject insurance policy.

38.  For reasons set forth above, Defendant violated its obligations under the policy of insurance and/or insurance regulations.

39. Defendant has acted in bad faith and did not have a reasonable basis for denying benefits under the policy of insurance.

40. Defendant has acted in bad faith in their dealing with their insured in regard to document production.

41. Defendant has breached their duty to act in good faith by refusing without appropriate foundation to pay Plaintiffs' claim.

42. As Plaintiffs' insurance provider, Defendant owed certain duties to Plaintiffs, which duties existed because of the contractual relationship and the law governing that relationship.

43. Defendant had the duty to treat Plaintiffs fairly and to act toward Plaintiffs with the utmost good faith in handling, evaluating, and paying their underinsured motorist claims.

44. The contract of insurance between the Plaintiffs and Defendant carried with it the implied covenant of good faith and fair dealing that is part of every contract.

45. Defendant had the duty to pay Plaintiffs the underinsured motorist benefits that were reasonably due to Plaintiffs under the insurance policy and to do so once Defendant's liability under the policy was reasonably clear.

46. Defendant's liability under the policy was clear.

47. There was no question that Defendant Driver was responsible for the collision.

48. There was no question that Defendant Driver was underinsured for the damages they caused to Plaintiffs.

49. In deciding the amount of benefits that should be paid to Plaintiffs, Defendant had a duty to make a thoroughly honest, intelligent, and objective decision.

50. In deciding the amount of benefits that should be paid to Plaintiffs, Defendant was required to accord Plaintiffs' interests the same consideration Defendant accorded their own interest of not paying benefits.

51.   Defendant conducted themselves in bad faith during the course of Plaintiffs'
underinsured motorist claim, and the Defendant engaged in unreasonable, abusive, and
dilatory claims practices including, but not limited to that conduct described above and:

     a.     By failure to investigate, evaluate and/or negotiate the claim and make an offer,
when Defendant knew the value of the claim far exceeded the policy limits;

     b.     By failing to perform an intelligent, objective, and honest evaluation of Plaintiffs'
claims;

     c.     By refusing to tender the underinsured limits;

     d.     By refusing to tender the underinsured limits and forcing Plaintiffs to expend
additional and unnecessary sums of money on expert fees and other costs;

     e.     By putting their own interests in not paying benefits to Plaintiffs above Plaintiffs'
interest in receiving a fair and reasonable amount of benefits to compensate him
for his injuries and damages;

     f.     By causing Plaintiffs to incur litigation costs, other than attorney fees, in order to
obtain the benefits owed to Plaintiffs and purchased with premiums properly paid;

     g.     By falsely advertising and promising that they act to help their insureds, when, in
fact, Defendant act like adversaries intent on denying their insureds the money
they are owed;

     h.     By failing to promptly, fairly, objectively, and reasonably investigate and evaluate
Plaintiffs' claim;

     i.     By breaching the implied covenant of good faith and fair dealing that is part of
every contract;

     j.     By refusing to investigate, evaluate and/or negotiate the Plaintiffs' claim in that
Plaintiffs' injuries, pain and suffering, and lost wages and lost earning capacity far
exceeded the underinsured motorist coverage limits;

k.  By failing to act in accordance with the contract of insurance between Plaintiffs and Defendants;

l.  By failing to have in place and/or follow appropriate procedures, policies, and/or guidelines to ensure Plaintiffs' claim was properly handled;

m.  By failing to negotiate with Plaintiffs in good faith;

n.  By Defendants' frivolous and unfounded refusal to pay proceeds of a policy;

o.  By employing an unfair method of competition and/or an unfair and/or deceptive act or practice in the business of insurance;

p.  By misrepresenting pertinent facts, policy, and/or contract provisions related to coverages at issue;

q.  By failing to acknowledge and act promptly upon written and/or oral communications with respect to claims arising under the insurance policy;

r.  By refusing to pay Plaintiffs' claim without conducting a reasonable investigation based upon all available information;

s.  By not attempting in good faith to effectuate prompt, fair, and equitable settlement of Plaintiffs' claim when Defendants' liability under the policy was reasonably clear;

t.  By compelling Plaintiffs to institute litigation to recover amounts due under the insurance policy by refusing to evaluate and/or investigate Plaintiffs' claim;

u.  By attempting to settle Plaintiffs' claim for less than the amount to which a reasonable person would have believed he or she was entitled by reference to written or printed advertising material accompanying or made part of the application;

v.  By delaying the investigation and/or payment of Plaintiffs' claim;

w.    By failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for the denial of Plaintiffs' claim and/or for the offer of a compromise settlement;

x.    By engaging in fraudulent and/or deceptive conduct that created a likelihood of confusion or of misunderstanding;

y.    By failing to act with the utmost good faith towards Plaintiff;

z.    By not performing a good faith evaluation of its chances for a successful defense at trial;

aa.    By unreasonably and dilatorily handling the underinsured motorist claim;

bb.    By failing to effectuate a prompt and equitable resolution;

cc.    By exhibiting a pattern of deliberate indifference to the rights of Defendant's policy holders;

dd.    By failing to properly discharge Defendant's duties of good faith and fair dealing during the pendency of Plaintiffs' underinsured motorist claim;

ee.    By not having a reasonable basis for denying benefits under the policy;

ff.    By refusing to compensate Plaintiffs, Defendant's insureds, for a loss covered by the policy of insurance without proper cause;

gg.    By knowingly and recklessly disregarding the lack of a reasonable basis in denying payment of the policy limits;

hh.    By making a frivolous or unfounded refusal to pay the proceeds of a policy done with dishonest purpose, motivated by self-interest or ill will;

ii.    By failing to make a good faith investigation into facts, and failing to communicate its reasons for denying payment under the claim with the claimant;

jj.    By intransigently refusing to settle a claim that could have been settled within policy limits, where the Defendants lacked a bona fide belief that they had a good possibility of winning at trial;

kk.    By forcing Plaintiffs to prepare for trial by refusing and/or failing to investigate and/or evaluate Plaintiffs' claim in relationship to the Plaintiffs' reasonable medical expenses and other damages;

ll.    By conduct that imported a dishonest purpose;

mm.   By failing equally to give consideration to paying the claim as to not paying the claim;

nn.    By failing equally to give consideration to paying the claim promptly as to not paying the claim promptly;

oo.    By failing to promptly and/or properly advise Plaintiffs of the basis for Defendants' denial of benefits;

pp.    By assuming a fiduciary obligation and then failing to carry out the same in good faith;

qq.    By failing to give the interests of Plaintiffs the same faithful consideration Defendant gave their own interests;

rr.    By evaluating Plaintiffs' claim in a manner that was less than honest, intelligent, and objective;

ss.    By setting a grossly inadequate reserve;

tt.    By adopting a "wait and see" approach with respect to what happened with the third-party claims;

uu.    By forcing Plaintiffs to retain legal counsel and the expenses associated therewith to secure payment of monies that otherwise should have been volunteered;

vv.   By failing timely to complete its investigation and to keep Plaintiffs apprised of the status of its investigation, including the reason(s) for failing to pay the policy limits, in violation of 31 Pa. Code 146.6;

ww.   By rejecting unreasonably any and all settlement offers made by Plaintiff to resolve the underinsured motorist claim;

xx.   By attempting to settle a claim for less than the amount to which a reasonable person would have believed he/she was entitled, in violation of 40 P.S. 1171.5;

yy.   By failing to complete the investigation of the Plaintiff's claim within thirty days and/or failing every forty-five days thereafter to provide Plaintiff with a reasonable written explanation for the delay and state when a decision on the claim could be expected, in violation of 31 Pa. Code 146.6 and 31 Pa. Code 146.7(c)(I);

zz.   By placing its financial interest ahead of the interest of the Plaintiffs, its insureds;

aaa.   By failing accurately to assess the strengths or weakness of the evidence as a whole;

bbb.   By refusing to take advantage of multiple opportunities to settle the case within the policy limits;

ccc.   By ignoring the clear liability of the tortfeasor, and the serious injuries and damages sustained by Plaintiffs,

ddd.   By misrepresenting pertinent facts or policy or contract provisions relating to coverages at issue,

eee.   By taking inconsistent positions in handling of the underinsured portion of the claim, and

fff.   By failing to abide by the terms and conditions of its own insurance policy.

ggg.  By failing to comply and act within Pennsylvania's statutes and regulations governing insurance practices, but not limited to Pennsylvania's Unfair Insurance Practices Act;

52.  As a result of the conduct of the Defendants described above, Plaintiff has been subjected to financial hardship, physical discomfort, emotional anguish, stress, and humiliation.

53.  As a result of the financial hardship sustained by the Plaintiff, as a result of Defendant's conduct, Plaintiff was forced to endure unnecessary financial hardship.

54.  As a result of the conduct of the Defendants described above, Plaintiff has been required to retain services of an attorney to proceed with litigation in order to collect benefits due and owing under his insurance policy with defendant.

55.  As a result of the conduct of the Defendants described above, Plaintiff was forced to prepare her underinsured motorist claim for trial, for which they incurred costs in excess of several thousand dollars.

56.  Defendant's conduct described hereinabove was committed in bad faith as contemplated by 42 Pa.C.S. § 8371.  The conduct was malicious, oppressive, and outrageous, warranting the imposition of all damages provided for by said statute.

57.  Pursuant to 42 Pa.C.S. §8371, Plaintiff is entitled to the following damages as a result of Defendant's bad faith conduct:

a.  Interest on the claims from the date the claims were made, in an amount equal to the prime rate of interest plus 3%;

b.  Cost and attorney's fees for the underlying action as well as the instant action; and

c.  Punitive damages, and such other compensatory and/or consequential damages allowed by law.

WHEREFORE, in consideration of the foregoing, Plaintiffs, respectfully demand that judgment be entered in their favor and against Defendants, State Farm Mutual Automobile Insurance Company, in an amount in excess of $50,000 exclusive of interest, costs of suit, punitive damages, attorney's fees, court costs, and any and all other damages allowed by the law of Pennsylvania, specifically including but not limited to 42 Pa.C.S.A §8371.

## COUNT III
## LOSS OF CONSORTIUM

58.    Paragraphs one (1) through fifty-seven-three (57), and all other paragraphs are incorporated herein by reference as if fully set forth herein at length as well as the entire Complaint.

59.    At all times pertinent hereto, Betty Jean Green, was and is the wife of Plaintiff, Ronald Green.

60.    Plaintiff, Betty Jean Green, has incurred and will incur various expenses related to the injuries sustained by her husband in the aforementioned action, including but not limited to medical expenses.

61.    Plaintiff, Betty Jean Green, has suffered the loss of consortium, society, services, economic contributions, care, love, affection, and intimate relations of her husband as a result of the aforementioned breaches of duties owed by Defendants to herself and to her husband, and she will continue to suffer so for an indefinite time in the future.

WHEREFORE, the Plaintiffs prays this Honorable Court grant judgment in their favor and against the Defendant, in a sum in excess of Fifty Thousand ($50,000.00) Dollars together with compensatory damages, punitive damages, interest and such other relief as this Honorable Court deems just and proper.

Respectfully Submitted,

**PISANCHYN LAW FIRM**

Michael J. Pisanchyn, Jr., Esquire
I.D. 87542
524 Spruce Street
Scranton, Pa 18503
(570) 344-1234
Attorneys for Plaintiffs

VERIFICATION

        Ronald Green & Betty Jean Green, being duly sworn according to
Pennsylvania law, deposes and says that they are the Plaintiffs in the
foregoing action; that the attached Complaint is based upon
information which they have furnished to counsel and information which
has been gathered by counsel in the preparation of the lawsuit. The
language of the Complaint is that of counsel and not of the
Plaintiffs. Plaintiffs have read the Complaint and, to the extent that
the Complaint is based upon information which they have given to
counsel, it is true and correct to the best of their knowledge,
information, and belief. To the extent that the content of the
Complaint is that of counsel, Plaintiffs have relied upon counsel in
making this Verification. If the foregoing contains averments which
are inconsistent in fact, signers have been unable, after reasonable
investigation, to ascertain which of the inconsistent averments are
true, but signer has knowledge or information sufficient to form a
belief that one of them is true. We understand that this verification
is made subject to the provisions of 18 Pa. C.S.A. §4904, pertaining
to unsworn falsification to authorities.




                                    Ronald Green
                              Ronald Green




                                    Betty Jean Green
                              Betty Jean Green

| | | |
|---|---|---|
| RONALD GREEN AND<br>BETTY JEAN GREEN | : | IN THE COURT OF COMMON PLEAS<br>OF LACKAWANNA COUNTY |
| | : | |
| Plaintiff | : | CIVIL ACTION – LAW |
| | : | |
| v. | : | |
| | : | |
| STATE FARM MUTUAL | : | No.  20CV2410 |
| AUTOMOBILE INSURANCE | : | |
| COMPANY | : | |
| Defendant | : | JURY TRIAL DEMANDED |

### PRAECIPE TO ATTACHED TO COMPLAINT

MAURI B. KELLY
LACKAWANNA COUNTY
CLERK OF JUDICIAL
RECORDS CIVIL DIVISION

EXHIBIT "A"

Policy Number: 133 9747-E01-38G
Sheet 1 of 2

**PLEASE ATTACH TO YOUR POLICY BOOKLET**

## 6091U CERTIFICATE OF GUARANTEED RENEWAL

This endorsement is a part of the policy. Except for the changes it makes, all other provisions of the policy remain the same and apply to this endorsement.

This endorsement is issued by the STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY of Bloomington, Illinois.

1. *We* will not cancel or nonrenew this policy as long as:

   a. this policy insures only *private passenger cars*;

   b. premiums are paid when due;

   c. all drivers of *your car* maintain valid drivers licenses;

   d. *you* continue to reside in an area in which State Farm Mutual Automobile Insurance Company sells automobile insurance and has the Certificate of Guaranteed Renewal available for use; and

   c. no *person* other than *you* becomes a named insured on this policy.

2. You will be able to select from those coverages which continue to be available from State Farm Mutual Automobile Insurance Company.

3. Coverage will be provided by *our* Car Policy, including any revisions that may be made to it.

Page 1 of 1                    6091U

## 6126LN AMENDATORY ENDORSEMENT

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

### 1. THIS POLICY

The following is added (this replaces item 1. of endorsement 6938A.1):

5. *Your* purchase of this policy may allow:

   a. you to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the *State Farm Companies*, subject to their applicable eligibility rules; or

   b. the premium or price for other: (1) insurance; (2) financial; (3) vehicle; (4) home; (5) electronic; or (6) travel products or services purchased by *you*, including noninsurance products or services, to vary. Such other products or services must be provided by the *State Farm Companies* or by an organization that has entered into an agreement or contract with the *State Farm Companies*. The *State Farm Companies* do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization.

### 2. LIABILITY COVERAGE

Insuring Agreement and Supplementary Payments are replaced by the following:

Insuring Agreement

1. *We* will pay damages an *insured* becomes legally liable to pay because of:

   a. *bodily injury* to others; and

   b. damage to property

caused by an accident that involves a vehicle for which that *insured* is provided Liability Coverage by this policy.

2. *We* have the right to:

   a. investigate, negotiate, and settle any claim or lawsuit;

   b. defend an *insured* in any claim or lawsuit, with attorneys chosen by *us*; and

   c. appeal any award or legal decision for damages payable under this policy's Liability Coverage.

Supplementary Payments

*We* will pay, in addition to the damages described in the Insuring Agreement of this policy's Liability Coverage, those items listed below that result from such accident:

1. Attorney fees for attorneys chosen by *us* to defend an *insured* who is sued for such damages. *We* have no duty to pay attorney fees incurred after *we* deposit in court or pay the amount due under the Insuring Agreement of this policy's Liability Coverage;

2. Court costs awarded by the court against an *insured* and resulting from that part of the lawsuit:

   a. that seeks damages payable under this policy's Liability Coverage; and

   b. against which *we* defend an *insured* with attorneys chosen by *us*.

   *We* have no duty to pay court costs incurred after *we* deposit in court or pay the amount due under the Insuring Agreement of this policy's Liability Coverage;

Page 1 of 3                    6126LN
© Copyright, State Farm Mutual Automobile Insurance Company, 2011

0543

Policy Number: 133 9747-E01-38G

PLEASE ATTACH TO YOUR POLICY BOOKLET

3. Interest the *insured* is legally liable to pay on damages payable under the Insuring Agreement of this policy's Liability Coverage:

a. before a judgment, but only the interest on the lesser of:

(1) that part of the damages *we* pay, or

(2) this policy's applicable Liability Coverage limit; and

b. after a judgment.

*We* have no duty to pay interest that accrues after *we* deposit in court, pay, or offer to pay, the amount due under the Insuring Agreement of this policy's Liability Coverage. *We* also have no duty to pay interest that accrues on any damages paid or payable by a party other than the *insured* or *us*;

4. Premiums for bonds, provided by a company chosen by *us*, required to appeal a decision in a lawsuit against an *insured*. *We* have no duty to:

a. pay for any bond with a face amount that exceeds this policy's applicable Liability Coverage limit;

b. furnish or apply for any bonds; or

c. pay premiums for bonds purchased after *we* deposit in court, pay, or offer to pay, the amount due under the Insuring Agreement of this policy's Liability Coverage; and

5. The following costs and expenses if related to and incurred after a lawsuit has been filed against an *insured*:

a. Loss of wages or salary, but not other income, up to $200 for each day an *insured* attends, at *our* request: (1) an arbitration; (2) a mediation; or (3) a trial of a lawsuit, and

b. Reasonable expenses incurred by an *insured* at *our* request other than

loss of wages, salary, or other income.

The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to *us* before *we* will pay such incurred costs or expenses.

3. GENERAL TERMS

a. The following is added to 2. Where Coverage Applies:

Death, Dismemberment and Loss of Sight Coverage applies worldwide.

b. The following is added (this replaces item 5.a. of endorsement 6939A.1):

Limited Coverage in Mexico

This policy does not provide Mexican auto insurance and does not comply with Mexican auto insurance requirements. If *you* or any other *insured* plan to drive in Mexico, then auto insurance providing coverage in Mexico should be purchased from a Mexican insurance company.

Subject to the above paragraph, the following coverages apply in Mexico, but only for accidents and *losses* that occur in Mexico within 50 miles of the United States of America border and only for *insureds* as defined under each of the following coverages:

a. Liability Coverage

b. Medical Payments Coverage; Extraordinary Medical Payments Coverage; Loss of Income Coverage; Funeral Benefits Coverage

c. Physical Damage Coverages

Any amount payable for the repair or replacement of the *covered vehicle* under this policy will be limited to the cost to repair or replace the *covered vehicle* in the United States of America.

Page 2 of 3                                              6126LN
© Copyright, State Farm Mutual Automobile Insurance Company, 2011

## 6938A.1 AMENDATORY ENDORSEMENT

This endorsement is a part of the policy. Except for the changes this endorsement makes, all other provisions of the policy remain the same and apply to this endorsement.

### 1. THIS POLICY

The following is added:

5. *Your* purchase of this policy may allow *you* to purchase certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other policies from the *State Farm Companies*, subject to their applicable eligibility rules.

### 2. DEFINITIONS

a. *Serious injury* is changed by deleting item 1.e. and adding the following:

4. An individual otherwise bound by the limited tort election shall retain full tort rights if injured while an occupant of a private passenger motor vehicle if that vehicle is described on a policy under which full tort rights were elected and that individual is:

a. residing in the household of any individual identified by name as an insured under that policy; and

b. either:

(1) a spouse or other relative of any individual identified by name as an insured under that policy; or

(2) a minor in the custody of either such named insured or relative of such named insured.

b. *State Farm Companies* is changed to read:

*State Farm Companies* means one or more of the following:

1. State Farm Mutual Automobile Insurance Company;

2. State Farm Fire and Casualty Company; and

3. Subsidiaries or affiliates of either 1. or 2. above.

### 3. LIABILITY COVERAGE

Exclusions

a. Exclusion 2. is deleted.

b. The exception to exclusion 8. is changed to read:

This exclusion does not apply to:

a. *you*;

b. any *resident relative*; or

c. any agent, employee, or business partner of a. or b. above

while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer owned by you*;

c. The exception to exclusion 11. is changed to read:

This exclusion does not apply to damage to a:

a. motor vehicle *owned by* the employer of *you* or any *resident relative* if such damage is caused by an *insured* while operating another motor vehicle;

Page 1 of 2                                              6938A.1
© Copyright, State Farm Mutual Automobile Insurance Company, 2008

0544

PLEASE ATTACH TO YOUR POLICY BOOKLET

Policy Number: 133 9747-E01-38G
Sheet 2 of 2

b. residence while rented to or leased to an *insured*; or

c. private garage while rented to or leased to an *insured*.

## 4. UNINSURED MOTOR VEHICLE COVERAGES

Additional Definitions – Coverages U and U3

Item 2. under *"Uninsured Motor Vehicle means a land motor vehicle:"* is changed to read:

2. the owner and driver of which remain unknown and which causes *bodily injury* to the *insured*.

## 5. GENERAL TERMS

a. The following is added to 2. Where Coverage Applies:

Liability Coverage, Medical Payments Coverage, Extraordinary Medical Payments Coverage, Loss of Income Coverage, Funeral Benefits Coverage, and Physical Damage Coverages also apply in Mexico within 50 miles of the United States of America border. A Physical Damage Coverage *loss* in Mexico is determined on the basis of cost at the nearest United States of America point.

Death, Dismemberment and Loss of Sight Coverage applies anywhere in the world.

b. The following is added to 4. Changes to This Policy:

d. Change of Policy Address

*We* may change the named insured's policy address as shown on the Declarations Page and in *our records* to the most recent address provided to *us* by:

(1) *you*; or

(2) the United States Postal Service.

c. 7. Nonrenewal is changed to read:

7. Nonrenewal

If *we* decide not to renew this policy:

a. because a named insured's driver's license or motor vehicle registration has been under suspension or revocation during the policy period, then at least 15 days before the end of the current policy period; or

b. for any other reason, then at least 60 days before the end of the current policy period

*we* will mail or deliver a nonrenewal notice to the most recent policy address that *we* have on record for the named insured who is shown on the Declarations Page. The mailing of the notice will be sufficient proof of notice.

d. The first sentence of b. How and When We May Cancel of 8. Cancellation is changed to read:

*We* may cancel this policy by mailing or delivering a written notice to the most recent policy address that *we* have on record for the named insured who is shown on the Declarations Page.

e. Item b. of 13. Legal Action Against Us is deleted.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2008



DOCUMENT CODE 91

009

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

STATE FARM FIRE AND CASUALTY COMPANY

Applicant/Insured Name _____

Policy Number _____

Company Use

Date _____ Agent's Code _____

I understand that this acknowledgment of coverage selection shall be applicable, as of the date specified above, to the policy of insurance identified above, on all replacement policies and on all renewals of either this policy or any replacement policy, unless I request in writing a different selection for such coverage.

## TORT OPTIONS

**NOTICE TO NAMED INSUREDS**

A. "Limited Tort" Option - The laws of the Commonwealth of Pennsylvania give you the right to choose a form of insurance that limits your right and the right, of members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses, but not for pain and suffering or other nonmonetary damages unless the injuries suffered fall within the definition of "serious injury" as set forth in the policy, or unless one of several other exceptions noted in the policy applies. The annual premium for basic coverage as required by law under this "limited tort" option is $ 801.48

Additional coverages under this option are available at additional cost.

B. If you wish to choose the **"limited tort"** option described in paragraph A, you must sign this notice where indicated below and return it. If you do not sign and return this notice, you will be considered to have chosen the **"full tort"** coverage as described in paragraph C and you will be charged the **"full tort"** premium.

I wish to choose the "limited tort" option described in paragraph A:

_Donald Brown_                                  _9-6-08_
Signature of a Named Insured                        Date

C. "Full Tort" Option - The laws of the Commonwealth of Pennsylvania also give you the right to choose a form of insurance under which you maintain an unrestricted right for you and the members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses and may also seek financial compensation for pain and suffering and other nonmonetary damages as a result of injuries caused by other drivers. The annual premium for basic coverages as required by law under this "full tort" option is $ 1369 .

Additional coverages under this option are available at additional cost.

D. If you wish to choose the **"full tort"** option described in paragraph C, you must sign this notice where indicated below and return it. However, if you do not sign and return this notice, you will be considered to have chosen the **"full tort"** coverage as described in paragraph C and you will be charged the **"full tort"** premium.

I wish to choose the **"full tort"** option described in paragraph C:

_____                    _____
Signature of a Named Insured                        Date

E. You may contact your insurance agent, broker or company to discuss the cost of other coverages.

0546



Please read the policy carefully. If there is an
accident, contact your State Farm agent or one
of our Claim Offices at once. (See "INSURED'S
DUTIES" in this policy booklet.)

State Farm®
**Car Policy**
Booklet

Pennsylvania
Policy Form 9838A

# CONTENTS

THIS POLICY..................................................3

DEFINITIONS.................................................4

LIABILITY COVERAGE ..........................7

    Additional Definition ..........................................7
    Insuring Agreement...........................................7
    Supplementary Payments.............................8
    Limits ..........................................................................8
    Nonduplication....................................................9
    Exclusions .............................................................9
    If Other Liability Coverage Applies..........10
    Required Out-of-State Liability Coverage 11
    Financial Responsibility Certification...... 11

FIRST PARTY COVERAGES.................. 12

    Additional Definitions – Coverages C2, Q,
    Z, Y, and F ........................................................... 12

    MEDICAL PAYMENTS –
    COVERAGE C2 ............................................. 12
    Insuring Agreement – Coverage C2.......... 12

    EXTRAORDINARY MEDICAL PAY-
    MENTS – COVERAGE Q ...................... 13
    Insuring Agreement and Limits –
    Coverage Q ........................................................ 13

    LOSS OF INCOME – COVERAGE Z..... 14
    Insuring Agreement – Coverage Z............ 14

    DEATH, DISMEMBERMENT AND LOSS
    OF SIGHT – COVERAGE Y ................... 14
    Additional Definition – Coverage Y ...... 14
    Insuring Agreement – Coverage Y........... 14
    Payments of Benefits – Coverage Y ......... 15

    FUNERAL BENEFITS –
    COVERAGE F................................................ 15
    Insuring Agreement – Coverage F ........... 15

    Limits – Coverage C2 ................................... 15
    Limits – Coverage Z ..................................... 15
    Limits – Coverage Y ..................................... 15
    Limits – Coverage F....................................... 15
    Limits – Coverages C2, Q, Z, Y, and F..... 15

    Priorities for the Payment of First Party
    Benefits – Coverages C2, Q, Z, Y, and F .. 15

    Exclusions – Coverages C2, Q, Z, Y, and F.... 16

    Mental or Physical Examination – Coverages
    C2, Q, Z, Y, and F........................................ 16

    COMBINED BENEFITS –
    COVERAGE M...............................................17

    Insuring Agreement – Coverage M ..........17
    Limits – Coverage M.....................................17
    Time Limitation – Coverage M .................17
    Other Provisions – Coverage M .................17

UNINSURED MOTOR VEHICLE
COVERAGES ..................................................17

    Additional Definitions – Coverages U
    and U3 ....................................................................17
    Insuring Agreement – Coverages U
    and U3 ................................................................... 18
    Consent to Settlement – Coverages U
    and U3 ................................................................... 19
    Deciding Fault and Amount – Coverages U
    and U3 ................................................................... 19
    Limits – Coverages U and U3 ................... 19
    Limits – Coverage U3 ..................................20
    Nonduplication – Coverages U and U3.....20
    Exclusions – Coverages U and U3 ...........20
    Exclusions – Coverage U .............................20
    Exclusions – Coverage U3 ...........................21
    If Other Uninsured Motor Vehicle Coverage
    Applies – Coverage U...................................21
    If Other Uninsured Motor Vehicle Coverage
    Applies – Coverage U3 .................................21
    Our Payment Options – Coverages U
    and U3 ...................................................................22

UNDERINSURED MOTOR VEHICLE
COVERAGES ..................................................23

    Additional Definitions – Coverages W
    and W3 ..................................................................23
    Insuring Agreement – Coverages W
    and W3 ..................................................................24
    Consent to Settlement – Coverages W
    and W3 ..................................................................24
    Deciding Fault and Amount – Coverages W
    and W3 ..................................................................24
    Limits – Coverages W and W3..................25
    Limits – Coverage W3 ..................................25
    Nonduplication – Coverages W and W3...25

0548

Exclusions – Coverages W and W3 ..........26
Exclusions – Coverage W .........................26
Exclusions – Coverage W3 .......................26
If Other Underinsured Motor Vehicle
Coverage Applies – Coverage W ...............26
If Other Underinsured Motor Vehicle
Coverage Applies – Coverage W3 ............27
Our Payment Options – Coverages W
and W3 .....................................................28
PHYSICAL DAMAGE COVERAGES ....28
Additional Definitions...............................28
Insuring Agreements .................................29
Supplementary Payments – Comprehensive
Coverage and Collision Coverage.............31
Limits and Loss Settlement – Comprehensive
Coverage and Collision Coverage..............31
Limits – Car Rental and Travel Expenses
Coverage ...................................................33
Nonduplication ..........................................33
Exclusions .................................................33
If Other Physical Damage Coverage or
Similar Coverage Applies ...........................35
Financed Vehicle ......................................36
Our Payment Options ...............................36

INSURED'S DUTIES ..............................37
Notice to Us of an Accident or Loss..........37
Notice to Us of a Claim or Lawsuit............37
Insured's Duty to Cooperate With Us........37
Questioning Under Oath............................37
Other Duties Under the Physical
Damage Coverages....................................38
Other Duties Under First Party Coverages,
Uninsured Motor Vehicle Coverages, and
Underinsured Motor Vehicle Coverages ...38
GENERAL TERMS...................................39
When Coverage Applies............................39
Where Coverage Applies...........................39
Newly Owned or Newly Leased Car.........39
Changes to This Policy..............................40
Premium ....................................................40
Renewal .....................................................41
Nonrenewal ...............................................41
Cancellation...............................................41
Assignment.................................................42
Bankruptcy or Insolvency of the Insured ..42
Concealment or Fraud ..............................42
Our Right to Recover Our Payments.........42
Legal Action Against Us ...........................42
Choice of Law ...........................................43
Severability.................................................43

## THIS POLICY

1. This policy consists of:

   a. the most recently issued Declarations Page;

   b. the policy booklet version shown on that Declarations Page; and

   c. any endorsements that apply, including those listed on that Declarations Page as well as those issued in connection with any subsequent renewal of this policy.

2. This policy contains all of the agreements between all named insureds and applicants and:

   a. *us*; and

   b. any of *our* agents.

3. *We* agree to provide insurance according to the terms of this policy:

   a. based on payment of premium for the coverages chosen; and

   b. unless otherwise stated in EXCEPTIONS, POLICY BOOKLET, AND ENDORSEMENTS on the Declarations Page, in reliance on the following statements:

      (1) The named insured is the sole owner of *your car*.

      (2) Neither *you* nor any member of *your* household has, within the past three years, had:

3
9838A

(a) vehicle insurance canceled or nonrenewed by an insurer; or

(b) either:

    (i) a license to drive; or

    (ii) a vehicle registration suspended, revoked, or refused.

(3) *Your car* is used for pleasure and business.

4. All named insureds and applicants agree by acceptance of this policy that:

    a. the statements in 3.b. above are made by the named insured or applicant and are true; and

    b. *we* provide this insurance on the basis those statements are true.

## DEFINITIONS

*We* define certain words and phrases below for use throughout the policy. Each coverage includes additional definitions only for use with that coverage. These definitions apply to the singular, plural, and possessive forms of these words and phrases. Defined words and phrases are printed in boldface italics.

*Bodily Injury* means bodily injury to a *person* and sickness, disease, or death that results from it.

*Car* means a land motor vehicle with four or more wheels, designed for use primarily on public roads. It does not include:

1. Any vehicle while located for use as a dwelling or other premises; or

2. A truck-tractor designed to pull any type of trailer.

*Car Business* means a business or job where the purpose is to sell, lease, rent, repair, service, modify, transport, store, or park land motor vehicles or any type of trailer.

*Fungi* means any type or form of fungus or fungi and includes:

1. Mold;

2. Mildew; and

3. Any of the following that are produced or released by fungi:

    a. Mycotoxins;

    b. Spores;

    c. Scents; or

    d. Byproducts.

*Newly Acquired Car* means a *car* newly *owned by you*. A *car* ceases to be a *newly acquired car* on the earlier of:

1. the effective date and time of a policy, including any binder, issued by *us* or any other company that describes such *car* as an insured vehicle; or

2. the end of the 14th calendar day immediately following the date such *car* is delivered to *you*.

If a *newly acquired car* is not otherwise afforded comprehensive coverage or collision coverage by this or any other policy, then this policy will provide Comprehensive Coverage or Collision Coverage for that *newly acquired car*, subject to a deductible of $500. Any coverage provided as a result of this paragraph will apply only until the end of the 5th calendar day immediately following the date the *newly acquired car* is delivered to *you*.

*Non-Owned Car* means a *car* that is in the lawful possession of *you* or any *resident relative* and that neither:

1. is *owned by*:

    a. *you*;

4
9838A

b. any *resident relative*;

c. any other *person* who resides primarily in *your* household; or

d. an employer of any *person* described in a., b., or c. above; nor

2. has been operated by, rented by, or in the possession of:

a. *you*; or

b. any *resident relative*

during any part of each of the 31 or more consecutive days immediately prior to the date of the accident or *loss*.

*Occupying* means in, on, entering, or exiting.

*Our* means the Company issuing this policy as shown on the Declarations Page.

*Owned By* means:

1. owned by;

2. registered to; or

3. leased, if the lease is written for a period of 31 or more consecutive days, to.

*Pedestrian* means a *person* who is not *occupying*:

1. a motorized vehicle; or

2. a vehicle designed to be pulled by a motorized vehicle.

*Person* means a human being.

*Private Passenger Car* means:

1. a *car* of the private passenger type, other than a pickup truck, van, minivan, or sport utility vehicle, designed primarily to carry *persons* and their luggage; or

2. a pickup truck, van, minivan, or sport utility vehicle:

a. that is not used for:

(1) wholesale; or

(2) retail

pick up or delivery; and

b. that has a Gross Vehicle Weight Rating of 10,000 pounds or less.

*Resident Relative* means a *person*, other than *you*, who resides primarily with the first *person* shown as a named insured on the Declarations Page and who is:

1. related to that named insured or his or her spouse by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise maintains his or her primary residence with that named insured; or

2. a ward or a foster child of that named insured, his or her spouse, or a *person* described in 1. above.

See First Party Coverages for the definition of *Resident Relative* used there.

*Serious injury* means a personal injury resulting in death, serious impairment of body function or permanent serious disfigurement.

Unless the injury sustained is a *serious injury*, each person who is bound by the limited tort election shall be precluded from maintaining an action for any noneconomic loss, except that:

1. An individual otherwise bound by the limited tort election who sustains damages in a motor vehicle accident as the consequence of the fault of another person may recover damages as if the individual damaged had elected the full tort alternative whenever the person at fault:

a. is convicted, or accepts Accelerated Rehabilitative Disposition (ARD) for driving under the influence of alcohol or a controlled substance in that accident;

b. is operating a motor vehicle registered in another state;

c. intends to injure himself or another person, provided that an individual does not intentionally injure himself or another person merely because his act

5
9838A

0551

or failure to act is intentional or done with his realization that it creates a grave risk of causing injury or the act or omission causing the injury is for the purpose of averting bodily harm to himself or another person;

d. has not maintained financial responsibility as required by Chapter 17 of Title 75 of the Pennsylvania Consolidated Statutes, provided that, nothing in this paragraph shall affect the limitation of section 1731(d)(2) of Title 75 of the Pennsylvania Consolidated Statutes (relating to availability, scope and amount of coverage); or

e. is *occupying* a vehicle both *owned by* a *resident relative* and to which the full tort election applies.

2. An individual otherwise bound by the limited tort election shall retain full tort rights with respect to claims against a person in the business of designing, manufacturing, repairing, servicing or otherwise maintaining motor vehicles arising out of a defect in such motor vehicle which is caused by or not corrected by an act or omission in the course of such business, other than a defect in a motor vehicle which is operated by such business.

3. An individual otherwise bound by the limited tort election shall retain full tort rights if injured while an occupant of a motor vehicle other than a private passenger motor vehicle.

*State Farm Companies* means one or more of the following:

1. State Farm Mutual Automobile Insurance Company;

2. State Farm Fire and Casualty Company; and

3. Any of their affiliates.

*Temporary Substitute Car* means a *car* that is in the lawful possession of the *person* operating it and that:

1. replaces *your car* for a short time while *your car* is out of use due to its:

   a. breakdown;

   b. repair;

   c. servicing;

   d. damage; or

   e. theft; and

2. neither *you* nor the *person* operating it own or have registered.

If a *car* qualifies as both a *non-owned car* and a *temporary substitute car*, then it is considered a *temporary substitute car* only.

*Trailer* means:

1. only those trailers:

   a. designed to be pulled by a *private passenger car*;

   b. not designed to carry *persons*; and

   c. while not used as premises for office, store, or display purposes; or

2. a farm implement or farm wagon while being pulled on public roads by a *car*.

*Us* means the Company issuing this policy as shown on the Declarations Page.

*We* means the Company issuing this policy as shown on the Declarations Page.

*You* or *Your* means the named insured or named insureds shown on the Declarations Page. If a named insured shown on the Declarations Page is a *person*, then "*you*" or "*your*" includes the spouse of the first *person* shown as a named insured if the spouse resides primarily with that named insured.

6
9838A

0552

*Your Car* means a vehicle shown under YOUR CAR on the Declarations Page. *Your Car* does not include a vehicle that *you* no longer own or lease.

If a *car* is shown on the Declarations Page under YOUR CAR, and *you* ask *us* to replace it with a *car* newly *owned by you*, then the *car* being replaced will continue to be considered *your car* until the earliest of:

1. the end of the 30th calendar day immediately following the date the *car* newly *owned by you* is delivered to *you*;

2. the date this policy is no longer in force; or

3. the date *you* no longer own or lease the *car* being replaced.

## LIABILITY COVERAGE

This policy provides Liability Coverage to the vehicles for which symbol "A" and a corresponding premium are shown on the Declarations Page.

### Additional Definition

*Insured* means:

1. *you* and *resident relatives* for:
   a. the ownership, maintenance, or use of:
      (1) *your car*;
      (2) a *newly acquired car*; or
      (3) a *trailer*; and
   b. the maintenance or use of:
      (1) a *non-owned car*; or
      (2) a *temporary substitute car*;

2. the first *person* shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured for the maintenance or use of a *car* that is *owned by*, or furnished by an employer to, a *person* who resides primarily in *your* household, but only if such *car* is neither *owned by*, nor furnished by an employer to, the first *person* shown as a named insured on the Declarations Page or that *person's* spouse;

3. any other *person* for his or her use of:
   a. *your car*;

b. a *newly acquired car*;
c. a *temporary substitute car*; or
d. a *trailer* while attached to a *car* described in a., b., or c. above.

Such vehicle must be used within the scope of *your* consent; and

4. any other *person* or organization vicariously liable for the use of a vehicle by an *insured* as defined in 1., 2., or 3. above, but only for such vicarious liability. This provision applies only if the vehicle is neither *owned by*, nor hired by, that other *person* or organization.

*Insured* does not include the United States of America or any of its agencies.

### Insuring Agreement

1. *We* will pay:
   a. damages an *insured* becomes legally liable to pay because of:
      (1) *bodily injury* to others; and
      (2) damage to property
      caused by an accident that involves a vehicle for which that *insured* is provided Liability Coverage by this policy;
   b. attorney fees for attorneys chosen by *us* to defend an *insured* who is sued for such damages; and

7
9838A

0553

c.  court costs charged to an *insured* and resulting from that part of a lawsuit:

   (1) that seeks damages payable under this policy's Liability Coverage; and

   (2) against which *we* defend an *insured* with attorneys chosen by *us*.

*We* have no duty to pay attorney fees and court costs incurred after *we* deposit in court or pay the amount due under this policy's Liability Coverage.

2.  *We* have the right to:

   a.  investigate, negotiate, and settle any claim or lawsuit;

   b.  defend an *insured* in any claim or lawsuit, with attorneys chosen by *us*; and

   c.  appeal any award or legal decision

   for damages payable under this policy's Liability Coverage.

**Supplementary Payments**

*We* will pay, in addition to the damages, fees, and costs described in the **Insuring Agreement** above, the interest, premiums, costs, and expenses listed below that result from such accident:

1.  Interest on damages owed by the *insured* that accrues:

   a.  before a judgment, where owed by law, but only on that part of the judgment *we* pay; and

   b.  after a judgment. *We* will not pay interest on damages paid or payable by a party other than the *insured* or *us*.

   *We* have no duty to pay interest that accrues after *we* deposit in court, pay, or offer to pay, the amount due under this policy's Liability Coverage;

2.  Premiums for bonds, provided by a company chosen by *us*, required to appeal a decision in a lawsuit against an *insured*. *We* have no duty to:

a.  pay for bonds that exceed this policy's applicable Liability Coverage limit;

b.  furnish or apply for any bonds; or

c.  pay premiums for bonds purchased after *we* deposit in court, pay, or offer to pay, the amount due under this policy's Liability Coverage; and

3.  The following costs and expenses if related to and incurred after a lawsuit has been filed against an *insured*:

   a.  Loss of wages or salary, but not other income, up to $200 for each day an *insured* attends, at *our* request:

      (1) an arbitration;

      (2) a mediation; or

      (3) a trial of a lawsuit; and

   b.  Reasonable expenses incurred by an *insured* at *our* request other than loss of wages, salary, or other income.

   The amount of any of the costs or expenses listed above that are incurred by an *insured* must be reported to *us* before *we* will pay such incurred costs or expenses.

**Limits**

The Liability Coverage limits for *bodily injury* are shown on the Declarations Page under "Liability Coverage – Bodily Injury Limits – Each Person, Each Accident."

The limit shown under "Each Person" is the most *we* will pay for all damages resulting from *bodily injury* to any one *person* injured in any one accident, including all damages sustained by other *persons* as a result of that *bodily injury*. The limit shown under "Each Accident" is the most *we* will pay, subject to the limit for "Each Person", for all damages resulting from *bodily injury* to two or more *persons* injured in the same accident.

The Liability Coverage limit for damage to property is shown on the Declarations Page under "Liability Coverage – Property Damage Limit – Each Accident". The limit shown is

8
9838A

the most *we* will pay for all damages resulting from damage to property in any one accident.

These Liability Coverage limits are the most *we* will pay regardless of the number of:

1. *insureds*;

2. claims made;

3. vehicles insured; or

4. vehicles involved in the accident.

## Nonduplication

*We* will not pay any damages or expenses under Liability Coverage that have already been paid under Uninsured Motor Vehicle Coverage or Underinsured Motor Vehicle Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*.

## Exclusions

THERE IS NO COVERAGE FOR AN *IN-SURED*:

1. WHO INTENTIONALLY CAUSES *BODILY INJURY* OR DAMAGE TO PROPERTY;

2. FOR *BODILY INJURY* TO:

    a. *YOU*;

    b. *RESIDENT RELATIVES*; AND

    c. ANY OTHER *PERSON* WHO BOTH RESIDES PRIMARILY WITH AN *INSURED* AND WHO:

       (1) IS RELATED TO THAT *INSURED* BY BLOOD, MARRIAGE, OR ADOPTION; OR

       (2) IS A WARD OR FOSTER CHILD OF THAT *INSURED*;

3. OR FOR THAT *INSURED'S* INSURER FOR ANY OBLIGATION UNDER ANY TYPE OF WORKERS' COMPENSA-TION, DISABILITY, OR SIMILAR LAW;

4. FOR *BODILY INJURY* TO THAT *IN-SURED'S* EMPLOYEE WHICH ARISES OUT OF THAT EMPLOYEE'S EMPLOYMENT. This exclusion does not apply to that *insured's* household

employee who is neither covered, nor re-quired to be covered, under workers' com-pensation insurance;

5. FOR *BODILY INJURY* TO THAT *IN-SURED'S* FELLOW EMPLOYEE WHILE THE FELLOW EMPLOYEE IS IN THE COURSE AND SCOPE OF HIS OR HER EMPLOYMENT. This exclu-sion does not apply to *you* and *resident relatives* who are legally liable for *bodily injury* to fellow employees;

6. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS RENTED TO OR LEASED TO OTHERS BY AN *INSURED*;

7. FOR DAMAGES ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OR USE OF A VEHICLE WHILE IT IS BEING USED TO CARRY *PERSONS* FOR A CHARGE. This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

8. WHILE MAINTAINING OR USING A VEHICLE IN CONNECTION WITH THAT *INSURED'S* EMPLOYMENT IN OR ENGAGEMENT OF ANY KIND IN A *CAR BUSINESS*. This exclusion does not apply to:

    a. *you*; or

    b. any *resident relative*

    while maintaining or using *your car*, a *newly acquired car*, a *temporary substitute car*, or a *trailer*;

9. WHILE THAT *INSURED* IS VALET PARKING A VEHICLE;

10. WHILE MAINTAINING OR USING ANY VEHICLE OTHER THAN *YOUR CAR*, A *NEWLY ACQUIRED CAR*, A *TEMPO-RARY SUBSTITUTE CAR*, OR A *TRAILER* IN ANY BUSINESS OR OC-CUPATION OTHER THAN A *CAR BUSI-NESS* OR VALET PARKING This exclusion does not apply to the mainte-nance or use of a *private passenger car*;

9

9838A

11. FOR DAMAGE TO PROPERTY WHILE IT IS:

   a.  *OWNED BY*;

   b.  RENTED TO;

   c.  USED BY;

   d.  IN THE CARE OF; OR

   e.  TRANSPORTED BY

   *YOU*, A *RESIDENT RELATIVE*, OR THE *PERSON* WHO IS LEGALLY LIABLE FOR THE DAMAGE. This exclusion does not apply to either damage to a residence while rented to or leased to an *insured* or damage to a private garage while rented to or leased to an *insured*;

12. FOR LIABILITY ASSUMED UNDER ANY CONTRACT OR AGREEMENT;

13. FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION;

14. WHILE USING A *TRAILER* WITH A MOTOR VEHICLE IF THAT *INSURED* IS NOT PROVIDED LIABILITY COVERAGE BY THIS POLICY FOR THE USE OF THAT MOTOR VEHICLE;

15. FOR THE OWNERSHIP, MAINTENANCE, OR USE OF ANY VEHICLE WHILE IT IS:

   a.  OFF PUBLIC ROADS AND BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

   b.  ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH SPEED DRIVING This exclusion does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving, or any type of competitive driving; OR

16. WHO IS AN EMPLOYEE OF THE UNITED STATES OF AMERICA OR ANY OF ITS AGENCIES, IF THE PROVISIONS OF THE FEDERAL TORT CLAIMS ACT APPLY.

### If Other Liability Coverage Applies

1. If two or more Liability Coverages provided by the *State Farm Companies* to *you* or any *resident relative* apply to the same accident, then:

   a.  such Liability Coverage limits will not be added together to determine the most that may be paid; and

   b.  the maximum amount that may be paid from all such coverages combined is the single highest applicable limit provided by any one of the coverages. *We* may choose one or more coverages from which to make payment.

2. The Liability Coverage provided by this policy applies as primary coverage for the ownership, maintenance, or use of *your car* or a *trailer* attached to it.

   a.  If:

      (1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Liability Coverage which applies to the accident as primary coverage; and

      (2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

      then *we* will pay the proportion of damages payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other liability coverage that apply as primary coverage.

10
9838A

b. If:

   (1) more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Liability Coverage which applies to the accident as primary coverage; and

   (2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then the *State Farm Companies* will pay the proportion of damages payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as primary coverage.

3. Except as provided in 2. above, the Liability Coverage provided by this policy applies as excess coverage.

  a. If:

   (1) this is the only Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Liability Coverage which applies to the accident as excess coverage; and

   (2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other liability coverage that apply as excess coverage.

  b. If:

   (1) more than one Car Policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Liability Coverage which applies to the accident as excess coverage; and

   (2) liability coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then the *State Farm Companies* will pay the proportion of damages payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other liability coverage that apply as excess coverage.

## Required Out-of-State Liability Coverage

If:

1. an *insured* is in another state of the United States of America, a territory or possession of the United States of America, the District of Columbia, or any province or territory of Canada, and as a nonresident becomes subject to its motor vehicle compulsory insurance law, financial responsibility law, or similar law; and

2. this policy does not provide at least the minimum liability coverage required by such law for such nonresident,

then this policy will be interpreted to provide the minimum liability coverage required by such law.

This provision does not apply to liability coverage required by law for motor carriers of passengers or motor carriers of property.

## Financial Responsibility Certification

When this policy is certified under any law as proof of future financial responsibility, and while required during the policy period, this policy will comply with such law to the extent required.

11
9838A

0557

# FIRST PARTY COVERAGES

The coverages under this section are provided in accordance with and subject to the Pennsylvania Motor Vehicle Financial Responsibility Act, as amended.

**Additional Definitions – Coverages C2, Q, Z, Y, and F**

*Bodily Injury* means accidental bodily harm to a *person* and that *person's* resulting illness, disease or death.

*First Party Benefits* means benefits paid or payable to an *insured* under Coverages C2, Q, Z, Y or F.

*Insured* means:

1. *you* and *resident relatives*; and

2. any other *person*:

    a. *occupying your car* or a *newly acquired car*; or

    b. not *occupying* a *motor vehicle* if injured as the result of an accident involving *your car*, or a *newly acquired car*. A parked and unoccupied *motor vehicle* is not a *motor vehicle* involved in the accident unless it was parked so as to cause unreasonable risk of injury.

*Motor Vehicle* means a vehicle which is self-propelled except one which is propelled:

1. solely by human power; or

2. upon rails.

*Resident Relative* means:

1. *your* spouse;

2. anyone related to *you* by blood, marriage or adoption; and

3. a minor in the custody of *you, your spouse* or a *resident relative*

resident in *your* household, even if temporarily residing elsewhere.

## MEDICAL PAYMENTS – COVERAGE C2

This policy provides Coverage C2 to the vehicles for which symbol "C2" and a corresponding premium are shown on the Declarations Page.

**Insuring Agreement – Coverage C2**

*We* will pay for medical expenses for *bodily injury* to an *insured* arising out of the maintenance or use of a *motor vehicle*.

Medical expenses are expenses incurred for reasonable and necessary medical treatment and rehabilitation services. This includes expenses for:

1. hospital, dental, surgical, psychiatric, psychological, osteopathic, ambulance, chiropractic, nursing and optometric services;

2. licensed physical therapy, vocational rehabilitation, occupational therapy, speech pathology and audiology;

3. medications, medical supplies and prosthetic devices; and

4. nonmedical remedial care and treatment rendered in accordance with a recognized religious method of healing.

Medical expenses will be paid:

1. if incurred within 18 months from the date of the accident causing the *bodily injury*; or

2. without limitation as to time, provided that, within 18 months from the date of the accident causing the *bodily injury*, it can be determined with reasonable medical probability that further expenses may be incurred as a result of the *bodily injury*.

The amount *we* will pay for medical expenses is subject to the limitations of Title 75 of the Pennsylvania Consolidated Statutes.

12
9838A

0558

## EXTRAORDINARY MEDICAL PAYMENTS – COVERAGE Q

This policy provides Coverage Q to the vehicles for which symbol "Q" and a corresponding premium are shown on the Declarations Page.

### Insuring Agreement and Limits – Coverage Q

*We* will pay up to the lifetime aggregate limit of $1,000,000 for those reasonable medical expenses which exceed $100,000. The medical expense must be for *bodily injury* to an *insured* caused by accident arising out of the maintenance or use of a *motor vehicle*.

Medical expenses are expenses incurred for reasonable and necessary medical treatment and rehabilitation services. This includes expenses for:

1. hospital, dental, surgical, psychiatric, psychological, osteopathic, ambulance, chiropractic, nursing and optometric services;

2. licensed physical therapy, vocational rehabilitation, occupational therapy, speech pathology and audiology;

3. medications, medical supplies and prosthetic devices; and

4. nonmedical remedial care and treatment rendered in accordance with a recognized religious method of healing.

Medical expenses will be paid:

1. if incurred within 18 months from the date of the accident causing the *bodily injury*; or

2. without limitation as to time, provided that within 18 months from the date of the accident causing the *bodily injury*, it can be determined with reasonable medical probability that further expenses may be incurred as a result of the *bodily injury*.

The most *we* will pay in any 12 month period beginning 18 months after the date the *insured's* reasonable medical expenses exceed $100,000 as a result of the *bodily injury* is $50,000.

These expenses must be:

1. for:

   a. services performed, or

   b. medical supplies, medication or drugs prescribed

   by a medical provider licensed by the state to provide the specific medical services; and

2. for diagnosis, direct care or treatment of the *bodily injury*. The diagnosis, direct care or treatment must be:

   a. within the standards of good medical practice, and

   b. not primarily for the convenience of the patient or medical provider.

*We* have the right to make or obtain an independent review of the medical expenses and services performed to determine if they are reasonable and necessary for the *bodily injury* sustained.

The amount *we* will pay for medical expenses is subject to the limitations of Title 75 of the Pennsylvania Consolidated Statutes.

REASONABLE MEDICAL EXPENSES DO NOT INCLUDE EXPENSES FOR TREATMENT, SERVICES, PRODUCTS OR PROCEDURES THAT ARE:

1. FOR RESEARCH, OR NOT PRIMARILY DESIGNED TO SERVE A MEDICAL OR REHABILITATIVE PURPOSE; OR

2. NOT COMMONLY AND CUSTOMARILY RECOGNIZED THROUGHOUT THE MEDICAL PROFESSIONS AND WITHIN THE UNITED STATES AS APPROPRIATE FOR THE TREATMENT OF THE *BODILY INJURY*.

13
9838A

0559

## LOSS OF INCOME – COVERAGE Z

This policy provides Coverage Z to the vehicles for which "Z" with a number beside it and a corresponding premium are shown on the Declarations Page. "Z" with a number beside it is *your* coverage symbol. Check *your* coverage symbol with the Coverage Z schedule in this provision for the limits *you* have chosen.

### Insuring Agreement – Coverage Z

*We* will pay income loss benefits with respect to *bodily injury* to an *insured* arising out of the maintenance or use of a *motor vehicle*. Income loss benefits are:

1. 80% of the *insured's* actual loss of gross income from work the *insured* would have performed except for the *bodily injury*;

2. reasonable expenses actually incurred for:

   a. hiring a substitute to perform self-employment services to reduce loss of gross income; or

   b. hiring special help thereby enabling the *insured* to work and reduce loss of gross income.

Income loss benefits do not include:

1. loss of expected income for any period following the death of an *insured*;

2. expenses incurred for services performed following the death of an *insured*; or

3. any loss of income during the first five working days the *insured* did not work after the accident because of the *bodily injury*.

### Schedule – Coverage Z

| Coverage Symbol | Maximum Payable Per Month | Total Maximum Benefits |
|---|---|---|
| Z1' | $1,000 | $ 5,000 |
| Z2 | 1,000 | 15,000 |
| Z3 | 1,500 | 25,000 |
| Z4 | 2,500 | 50,000 |

## DEATH, DISMEMBERMENT AND LOSS OF SIGHT – COVERAGE Y

This policy provides Coverage Y to the vehicles for which "Y" with a number beside it and a corresponding premium are shown on the Declarations Page. "Y" with a number beside it is *your* coverage symbol. Check *your* coverage symbol with the Coverage Y schedule in this provision for the limits *you* have chosen.

### Additional Definition – Coverage Y

*Loss* means the *loss* of:

1. the foot or hand, cut off through or above the ankle or wrist;

2. the whole thumb or finger; or

3. all sight.

### Insuring Agreement – Coverage Y

*We* will pay the amount shown in the schedule that applies for death of, or *loss* to, an *insured* arising out of the maintenance or use of a *motor vehicle*. The death or *loss* must be the direct result of the accident and not due to any other cause. The death must occur within 24 months from the date of the accident. If the death occurs within 24 hours after the accident, *we* will pay only the amount that applies to death. *Loss* must occur within 90 days of the accident.

14
9838A

0560

### Schedule – Coverage Y

| Coverage Symbol | Y1 | Y2 | Y3 |
|---|---|---|---|
| Death | $5,000 | $10,000 | $25,000 |
| *Loss* of: hands, feet; sight of eyes; one hand & one foot; or one hand or one foot & sight of one eye | 5,000 | 10,000 | 25,000 |
| one hand or one foot; or sight of one eye | 2,500 | 5,000 | 12,500 |
| thumb & finger on one hand; or three fingers | 1,500 | 3,000 | 7,500 |
| any two fingers | 1,000 | 2,000 | 5,000 |

### Payments of Benefits – Coverage Y

The death benefit shall be paid to the executor or administrator of the *insured's* estate.

### FUNERAL BENEFITS – COVERAGE F

This policy provides Coverage F to the vehicles for which symbol "F" and a corresponding premium are shown on the Declarations Page.

### Insuring Agreement – Coverage F

*We* will pay for funeral expenses directly related to the funeral, burial, cremation or other form of disposition of the remains of an *insured*. The death must be the result of the accident. The expenses must be incurred within 24 months from the date of the accident.

### Limits – Coverage C2

The amount of coverage for medical expenses is shown on the Declarations Page under "Medical Payments Coverage – Limit – Each Person".

### Limits – Coverage Z

The most *we* will pay an *insured* for income loss benefits per month and in the aggregate are shown in the coverage Z schedule next to *your* coverage symbol.

### Limits – Coverage Y

The amount *we* will pay because of the death of the *insured* is shown under *your* coverage symbol in the Coverage Y schedule. The maximum amount payable to an *insured* for all *loss*, as shown in the schedule, shall not exceed the death benefit amount shown for *your* coverage symbol.

The amount shown in the schedule for death of or *loss* to the *insured* is doubled for an *insured* who, at the time of the accident, is using the vehicle's complete restraint system as recommended by the vehicle's manufacturer.

### Limits – Coverage F

The amount of coverage for funeral expenses is shown on the Declarations Page under "Funeral Benefits Coverage – Limit – Each Person".

### Limits – Coverages C2, Q, Z, Y, and F

These coverages are excess over, but shall not duplicate, any amount paid or payable to or for the *insured* under any workers' compensation law.

### Priorities for the Payment of First Party Benefits – Coverages C2, Q, Z, Y, and F

1. When more than one policy applies, the *person* who suffers *bodily injury* shall recover *first party benefits* against applicable insurance coverage in the following order of priority:

   a. The policy on which the *person* is a named insured.

   b. The policy providing coverage because the *person* is residing in the household of a named insured and is:

15
9838A

0561

(1) a spouse or other relative of a named insured; or

(2) a minor in the custody of either a named insured or a relative of a named insured.

c. The policy covering the *motor vehicle occupied* by the injured *person* at the time of the accident.

d. For a *person* who is not the occupant of a *motor vehicle*, the policy on any *motor vehicle* involved in the accident. A parked and unoccupied *motor vehicle* is not a *motor vehicle* involved in the accident unless it was parked so as to cause unreasonable risk of injury.

2. THIS POLICY DOES NOT APPLY IF THERE IS ANOTHER POLICY AT A HIGHER PRIORITY LEVEL. Item a. above is considered the highest priority. Item d. is the lowest priority.

3. Subject to the above, if an *insured* is entitled to *first party benefits* under more than one coverage, the maximum recovery under all coverages for any *first party benefit* will not exceed the amount payable under the coverage with the highest limit of liability for that *first party benefit*.

Exclusions – Coverages C2, Q, Z, Y, and F

THERE IS NO COVERAGE FOR *BODILY INJURY*:

1. TO ANY *PERSON* WHOSE CONDUCT CONTRIBUTED TO HIS OR HER *BODILY INJURY* IN ANY OF THE FOLLOWING WAYS:

a. WHILE INTENTIONALLY INJURING HIMSELF, HERSELF OR ANOTHER;

b. WHILE COMMITTING A FELONY; OR

c. WHILE SEEKING TO ELUDE LAWFUL APPREHENSION OR ARREST BY A LAW ENFORCEMENT OFFICIAL.

2. TO ANY *PERSON* WHO KNOWINGLY CONVERTS A *MOTOR VEHICLE* if the *bodily injury* arises out of the maintenance or use of the converted vehicle. This does not apply to *you* or any *resident relative*.

3. TO ANY *PERSON* WHO OWNS A CURRENTLY REGISTERED *MOTOR VEHICLE* AND DOES NOT HAVE THE REQUIRED FINANCIAL RESPONSIBILITY, EVEN IF THAT *PERSON* IS *OCCUPYING* OR STRUCK BY A *MOTOR VEHICLE* FOR WHICH FINANCIAL RESPONSIBILITY IS PROVIDED. This does not apply to *you* or *your spouse* while *occupying* a vehicle insured under the liability coverage of this policy or when struck as a *pedestrian*.

4. TO ANY *PERSON* WHILE OPERATING OR *OCCUPYING*:

a. A RECREATIONAL VEHICLE NOT INTENDED FOR HIGHWAY USE; OR

b. A MOTORCYCLE, MOTOR-DRIVEN CYCLE, MOTORIZED PEDALCYCLE OR LIKE TYPE VEHICLE REQUIRED TO BE REGISTERED UNDER TITLE 75 OF THE PENNSYLVANIA CONSOLIDATED STATUTES.

**Mental or Physical Examination – Coverages C2, Q, Z, Y, and F**

Whenever the mental or physical condition of a *person* is material to any claim for medical expenses or income loss benefits, a court of competent jurisdiction may order the *person* to submit to mental or physical examination by a physician. If a *person* fails to comply with the order, the court may order that the *person* be denied benefits until he or she complies.

16
9838A

0562

## COMBINED BENEFITS – COVERAGE M

This policy provides Coverage M to the vehicles for which symbol "M" and a corresponding premium are shown on the Declarations Page.

### Insuring Agreement – Coverage M

*We* will pay for *bodily injury* to an *insured* arising out of the maintenance or use of a *motor vehicle*:

1. Medical expenses as payable under Coverage C2;

2. Income loss benefits as payable under Coverage Z;

3. The benefits as payable under Coverage Y3; and

4. Funeral expenses as payable under Coverage F.

### Limits – Coverage M

1. The aggregate limit of liability is shown on the Declarations Page under "Combined Benefits Coverage – Limit – Each Person". This is the maximum amount payable for *bodily injury* to an *insured* as the result of an accident.

2. The most *we* will pay to or for an *insured* is as follows:

| Benefit | Limit |
|---|---|
| Medical Expenses | Up to the Aggregate Limit |
| Income Loss | Up to the Aggregate Limit |
| Death | $25,000 |
| Funeral Expenses | Up to $2,500 |

3. Any amount payable for medical expenses greater than $100,000 shall be excess over any amount paid or payable under Extraordinary Medical Payments – Coverage Q.

### Time Limitation – Coverage M

Subject to the limit of liability:

1. benefits are only payable for expenses and loss incurred up to three years from the date of the accident.

2. the death benefit is payable only if death occurs within three years of the date of the accident.

### Other Provisions – Coverage M

Except as amended above, all provisions relating to Coverages C2, Z, Y, and F apply to expense, loss or death benefits of Coverage M.

## UNINSURED MOTOR VEHICLE COVERAGES

This policy provides Uninsured Motor Vehicle – Coverage U3 (Stacking Option) to the vehicles for which symbol "U" and a corresponding premium are shown on the Declarations Page.

This policy provides Uninsured Motor Vehicle – Coverage U3 (Non-Stacking Option) to the vehicles for which symbol "U3" and a corresponding premium are shown on the Declarations Page.

### Additional Definitions – Coverages U and U3

*Insured* means:

1. *you*;

2. *resident relatives*;

3. any other *person* while *occupying*:

   a. *your car*, a *temporary substitute car*, or a trailer attached to such a *car*. Such other *person* is an *insured* only under the coverage applicable to the vehicle

17
9838A

which that *person* was *occupying* and such *person* is not an *insured* under the coverage applicable to any other vehicle insured by this policy. Such vehicle has to be used within the scope of *your* consent; or

b.   a *newly acquired car* or a trailer attached to such a *car*. If the *newly acquired car* replaces *your car*, such other *person* is an *insured* only under the coverage applicable to the vehicle that was replaced. If the *newly acquired car* does not replace *your car*, such other *person* is an *insured* only under the coverage applicable to any one vehicle insured by this policy or any other policy issued by us to *you* or *your spouse*. Such *car* has to be used within the scope of *your* consent.

Such other *person occupying* a vehicle used to carry *persons* for a charge is not an *insured*; and

4.   any *person* entitled to recover compensatory damages as a result of *bodily injury* to an *insured* as defined in 1., 2., or 3. above.

*Uninsured Motor Vehicle* means a land motor vehicle:

1.   the ownership, maintenance, and use of which is:

a.   not insured or bonded for bodily injury liability at the time of the accident; or

b.   insured or bonded for bodily injury liability at the time of the accident; but

(1)   the limits are less than required by the financial responsibility act of Pennsylvania; or

(2)   the insuring company:

(a)   denies that its policy provides liability coverage for compensatory damages that result from the accident; or

(b)   is or becomes insolvent; or

2.   the owner and driver of which remain unknown and which causes *bodily injury* to the *insured*. If there is no physical contact between that land motor vehicle and the *insured* or the vehicle the *insured* is *occupying*, then the facts of the accident must be corroborated by a disinterested *person* who witnessed the accident. *You, resident relatives*, and *persons occupying* the same vehicle as the *insured* are not disinterested *persons*.

*Uninsured Motor Vehicle* does not include a land motor vehicle:

1.   whose ownership, maintenance, or use is provided Liability Coverage by this policy;

2.   *owned by*, rented to, or furnished or available for the regular use of *you* or any *resident relative*;

3.   *owned by*, rented to, or operated by a self-insurer under any motor vehicle financial responsibility law, any motor carrier law, or any similar law;

4.   designed for use primarily off public roads except while on public roads; or

5.   while located for use as a dwelling or other premises.

**Insuring Agreement – Coverages U and U3**

*We* will pay compensatory damages for *bodily injury* an *insured* is legally entitled to recover from the owner or driver of an *uninsured motor vehicle*. The *bodily injury* must be:

1.   sustained by an *insured*; and

2.   caused by an accident that involves the ownership, maintenance, or use of an *uninsured motor vehicle* as a motor vehicle.

The amount *we* will pay for damages is subject to the limitations of Title 75 of the Pennsylvania Consolidated Statutes.

18
9838A

0564

## Consent to Settlement – Coverages U and U3

The *insured* must inform *us* of a settlement offer, if any, proposed by or on behalf of the owner or driver of the *uninsured motor vehicle,* and the *insured* must request *our* written consent to accept such settlement offer.

If *we:*

1. consent in writing, then the *insured* may accept such settlement offer.

2. inform the *insured* in writing that *we* do not consent, then the *insured* may not accept such settlement offer and:

   a. *we* will make payment to the *insured* in an amount equal to such settlement offer. This payment is considered a payment made by or on behalf of the owner or driver of the *uninsured motor vehicle*; and

   b. any recovery from or on behalf of the owner or driver of the *uninsured motor vehicle* shall first be used to repay *us.*

## Deciding Fault and Amount – Coverages U and U3

1. a. The *insured* and *we* must agree to the answers to the following two questions:

      (1) Is the *insured* legally entitled to recover compensatory damages from the owner or driver of the *uninsured motor vehicle*?

      (2) If the *insured* and *we* agree that the answer to 1.a.(1) above is yes, then what is the amount of the compensatory damages that the *insured* is legally entitled to recover from the owner or driver of the *uninsured motor vehicle*?

   b. If there is no agreement on the answer to either question in 1.a. above, then the *insured* shall:

      (1) file a lawsuit, in a state or federal court that has jurisdiction, against:

         (a) *us;*

   (b) the owner and driver of the *uninsured motor vehicle* unless *we* have consented to a settlement offer proposed by or on behalf of such owner or driver; and

   (c) any other party or parties who may be legally liable for the *insured's* damages;

      (2) consent to a jury trial if requested by *us;*

      (3) agree that *we* may contest the issues of liability and the amount of damages; and

      (4) secure a judgment in that action. The judgment must be the final result of an actual trial and any appeals, if any appeals are taken.

2. *We* are not bound by any:

   a. judgment obtained without *our* written consent; and

   b. default judgment against any *person* or organization other than *us.*

3. Regardless of the amount of any award, including any judgment or default judgment, *we* are not obligated to pay any amount in excess of the available limits under this coverage of this policy.

## Limits – Coverages U and U3

The Uninsured Motor Vehicle Coverage limits are shown on the Declarations Page under "Uninsured Motor Vehicle Coverage – Bodily Injury Limits – Each Person, Each Accident".

The limit shown under "Each Person" is the most *we* will pay for all damages resulting from *bodily injury* to any one *insured* injured in any one accident, including all damages sustained by other *insureds* as a result of that *bodily injury*. The limit shown under "Each Accident" is the most *we* will pay, subject to the limit for "Each Person", for all damages resulting from *bodily injury* to two or more *insureds* injured in the same accident.

19
9838A

0565

These Uninsured Motor Vehicle Coverage limits are the most *we* will pay regardless of the number of:

1. *insureds*;

2. claims made; or

3. *uninsured motor vehicles* involved in the accident.

**Limits – Coverage U3**

1. If there is more than one vehicle insured under this policy, the maximum limit of liability available is:

   a. the limit applicable to the vehicle that was involved in the accident while *occupying your car*;

   b. the limit applicable to the vehicle that was replaced while *occupying a newly acquired car* that replaces *your car*; or

   c. the limit applicable to any one vehicle insured under this policy while injured as a *pedestrian* or injured while *occupying* a *newly acquired car* that does not replace *your car*, a *temporary substitute car*, or a *non-owned car*.

2. The limits of liability are not increased because more than one vehicle is insured under this policy.

**Nonduplication – Coverages U and U3**

*We* will not pay under Uninsured Motor Vehicle Coverage any damages that have already been paid to or for the *insured*:

1. by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

2. for *bodily injury* under Liability Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*.

**Exclusions – Coverages U and U3**

THERE IS NO COVERAGE:

1. FOR AN *INSURED* WHO, WITHOUT *OUR* WRITTEN CONSENT, SETTLES WITH ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *BODILY INJURY*;

2. FOR PAIN, SUFFERING OR OTHER NONMONETARY DAMAGES SUSTAINED BY AN *INSURED* IF THE *BODILY INJURY* IS NOT A *SERIOUS INJURY* AND THE LIMITATION OF SECTION 1731(d)(2) OF TITLE 75 OF THE PENNSYLVANIA CONSOLIDATED STATUTES APPLIES;

3. FOR AN *INSURED* WHOSE *BODILY INJURY* RESULTS FROM THE DISCHARGE OF A FIREARM;

4. TO THE EXTENT IT BENEFITS:

   a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY;

   b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION LAW, DISABILITY BENEFITS LAW, OR SIMILAR LAW; OR

   c. ANY GOVERNMENT OR ANY OF ITS POLITICAL SUBDIVISIONS OR AGENCIES;

5. FOR PUNITIVE OR EXEMPLARY DAMAGES; OR

6. FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION.

**Exclusions – Coverage U**

THERE IS NO COVERAGE FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY* WHILE *OCCUPYING* A MOTOR VEHICLE *OWNED BY* THAT *INSURED* IF THE VEHICLE IS NOT INSURED FOR UNINSURED MOTOR VEHICLE COVERAGE UNDER THIS POLICY OR ANY OTHER POLICY.

20
9838A

0566

## Exclusions – Coverage U3

THERE IS NO COVERAGE FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY* WHILE *OCCUPYING* A MOTOR VEHICLE *OWNED BY YOU* OR ANY *RESIDENT RELATIVE* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*.

This exclusion does not apply to the first *person* shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured, while *occupying* a motor vehicle not *owned by* one or both of them.

### If Other Uninsured Motor Vehicle Coverage Applies – Coverage U

1. If uninsured motor vehicle coverage for *bodily injury* is available to an *insured* from more than one policy provided by *us* or any other insurer, any coverage applicable:

    a. under this policy shall apply on a primary basis if the *insured* sustains *bodily injury* while not *occupying* a motor vehicle or trailer.

    b. to the vehicle covered under this policy which the *insured* was *occupying* when the *bodily injury* was sustained shall apply on a primary basis. Any other coverage provided by this policy shall apply on an excess basis.

    c. under this policy shall apply on an excess basis if the *insured* sustains *bodily injury* while *occupying* a vehicle other than *your car*.

2. Subject to item 1 above, if this policy and one or more other policies provide coverage for *bodily injury*:

    a. on a primary basis, *we* are liable only for our share. *Our* share is that percent of the damages payable on a primary basis that the limit of liability of this coverage bears to the total of all applicable uninsured motor vehicle coverage on a primary basis.

    b. on an excess basis, *we* are liable only for our share. *Our* share is that percent of the damages payable on an excess basis that the limit of liability of this coverage bears to the total of all applicable uninsured motor vehicle coverage provided on an excess basis.

### If Other Uninsured Motor Vehicle Coverage Applies – Coverage U3

1. If Uninsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by one or more of the *State Farm Companies* apply to the same *bodily injury*, then:

    a. the Uninsured Motor Vehicle Coverage limits of such policies will not be added together to determine the most that may be paid; and

    b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. The Uninsured Motor Vehicle Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car*.

    a. If:

    (1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Uninsured Motor Vehicle Coverage which applies to the accident as primary coverage; and

    (2) uninsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

21
9838A

then *we* will pay the proportion of damages payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other uninsured motor vehicle coverage that apply as primary coverage.

   b. If:

     (1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Uninsured Motor Vehicle Coverage which applies to the accident as primary coverage; and

     (2) uninsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then the *State Farm Companies* will pay the proportion of damages payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other uninsured motor vehicle coverage that apply as primary coverage.

3. Except as provided in 2. above, the Uninsured Motor Vehicle Coverage provided by this policy applies as excess coverage.

   a. If:

     (1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Uninsured Motor Vehicle Coverage which applies to the accident as excess coverage; and

     (2) uninsured motor vehicle coverage provided by one or more sources

other than the *State Farm Companies* also applies as excess coverage for the same accident,

then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other uninsured motor vehicle coverage that apply as excess coverage.

   b. If:

     (1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Uninsured Motor Vehicle Coverage which applies to the accident as excess coverage; and

     (2) uninsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then the *State Farm Companies* will pay the proportion of damages payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other uninsured motor vehicle coverage that apply as excess coverage.

## Our Payment Options – Coverages U and U3

*We* may, at *our* option, make payment to one or more of the following:

1. The *insured*;

2. The *insured's* surviving spouse;

3. A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4. A *person* authorized by law to receive such payment.

22
9838A

0568

## UNDERINSURED MOTOR VEHICLE COVERAGES

This policy provides Underinsured Motor Vehicle – Coverage W (Stacking Option) to the vehicles for which symbol "W" and a corresponding premium are shown on the Declarations Page.

This policy provides Underinsured Motor Vehicle – Coverage W3 (Non-Stacking Option) to the vehicles for which symbol "W3" and a corresponding premium are shown on the Declarations Page.

**Additional Definitions – Coverages W and W3**

*Insured* means:

1. *you;*

2. *resident relatives;*

3. any other *person* while *occupying:*

   a. *your car,* a *temporary substitute car,* or a trailer attached to such a *car.* Such other *person* is an *insured* only under the coverage applicable to the vehicle which that *person* was *occupying* and such *person* is not an *insured* under the coverage applicable to any other vehicle insured by this policy. Such vehicle has to be used within the scope of *your* consent; or

   b. a *newly acquired car* or a trailer attached to such a *car.* If the *newly acquired car* replaces *your car,* such other *person* is an *insured* only under the coverage applicable to the vehicle that was replaced. If the *newly acquired car* does not replace *your car,* such other *person* is an *insured* only under the coverage applicable to any one vehicle insured by this policy or any other policy issued by us to *you* or *your spouse.* Such *car* has to be used within the scope of *your* consent.

Such other *person occupying* a vehicle used to carry *persons* for a charge is not an *insured;* and

4. any *person* entitled to recover compensatory damages as a result of *bodily injury* to an *insured* as defined in 1., 2., or 3. above.

*Underinsured Motor Vehicle* means a land motor vehicle:

1. the ownership, maintenance, and use of which is either:

   a. insured or bonded for bodily injury liability at the time of the accident; or

   b. self-insured under any motor vehicle financial responsibility law, any motor carrier law, or any similar law; and

2. for which the total limits of insurance and self-insurance for bodily injury liability from all sources:

   a. are less than the amount of the *insured's* damages; or

   b. have been reduced by payments to *persons* other than *you* and *resident relatives* to less than the amount of the *insured's* damages.

*Underinsured Motor Vehicle* does not include a land motor vehicle:

1. whose ownership, maintenance, or use is provided Liability Coverage by this policy;

2. *owned by,* rented to, or furnished or available for the regular use of *you* or any *resident relative;*

3. designed for use primarily off public roads except while on public roads;

4. while located for use as a dwelling or other premises; or

5. defined as an *uninsured motor vehicle* under Uninsured Motor Vehicle Coverage of this policy.

23
9838A

0569

## Insuring Agreement – Coverages W and W3

*We* will pay compensatory damages for *bodily injury* an *insured* is legally entitled to recover from the owner or driver of an *underinsured motor vehicle*. The *bodily injury* must be:

1. sustained by an *insured*; and

2. caused by an accident that involves the ownership, maintenance, or use of an *underinsured motor vehicle* as a motor vehicle.

*We* will pay only if the full amount of all available limits of all bodily injury liability bonds, policies, and self-insurance plans that apply to the *insured's bodily injury* have been used up by payment of judgments or settlements, or have been offered to the *insured* in writing.

The amount *we* will pay for damages is subject to the limitations of Title 75 of the Pennsylvania Consolidated Statutes.

## Consent to Settlement – Coverages W and W3

The *insured* must inform *us* of a settlement offer for the full amount of all available limits proposed by or on behalf of the owner or driver of the *underinsured motor vehicle*, and the *insured* must request *our* written consent to accept such settlement offer.

If *we*:

1. consent in writing, then the *insured* may accept such settlement offer.

2. inform the *insured* in writing that *we* do not consent, then the *insured* may not accept such settlement offer and:

   a. *we* will make payment to the *insured* in an amount equal to such settlement offer. This payment is considered a payment made by or on behalf of the owner or driver of the *underinsured motor vehicle*; and

   b. any recovery from or on behalf of the owner or driver of the *underinsured motor vehicle* shall first be used to repay *us*.

## Deciding Fault and Amount – Coverages W and W3

1. a. The *insured* and *we* must agree to the answers to the following two questions:

      (1) Is the *insured* legally entitled to recover compensatory damages from the owner or driver of the *underinsured motor vehicle*?

      (2) If the *insured* and *we* agree that the answer to 1.a.(1) above is yes, then what is the amount of the compensatory damages that the *insured* is legally entitled to recover from the owner or driver of the *underinsured motor vehicle*?

   b. If there is no agreement on the answer to either question in 1.a. above, then the *insured* shall:

      (1) file a lawsuit, in a state or federal court that has jurisdiction, against:

          (a) *us*;

          (b) the owner and driver of the *underinsured motor vehicle* unless *we* have consented to a settlement offer proposed by or on behalf of such owner or driver; and

          (c) any other party or parties who may be legally liable for the *insured's* damages;

      (2) consent to a jury trial if requested by *us*;

      (3) agree that *we* may contest the issues of liability and the amount of damages; and

      (4) secure a judgment in that action. The judgment must be the final result of an actual trial and any appeals, if any appeals are taken.

24
9838A

0570

2.  *We* are not bound by any:

    a.  judgment obtained without *our* written consent; and

    b.  default judgment against any *person* or organization other than *us*.

3.  Regardless of the amount of any award, including any judgment or default judgment, *we* are not obligated to pay any amount in excess of the available limits under this coverage of this policy.

### Limits – Coverages W and W3

1.  The Underinsured Motor Vehicle Coverage limits are shown on the Declarations Page under "Underinsured Motor Vehicle Coverage – Bodily Injury Limits – Each Person, Each Accident".

    a.  The most *we* will pay for all damages resulting from *bodily injury* to any one *insured* injured in any one accident, including all damages sustained by other *insureds* as a result of that *bodily injury*, is the lesser of:

        (1)  the limit shown under "Each Person"; or

        (2)  the amount of all damages resulting from that *bodily injury* reduced by the sum of all payments for damages resulting from that *bodily injury* made by or on behalf of any *person* or organization who is or may be held legally liable for that *bodily injury*.

    b.  Subject to a. above, the most *we* will pay for all damages resulting from *bodily injury* to two or more *insureds* injured in the same accident is the limit shown under "Each Accident" reduced by the sum of all payments for *bodily injury* made to all *insureds* by or on behalf of any *person* or

organization who is or may be held legally liable for the *bodily injury*.

2.  These Underinsured Motor Vehicle Coverage limits are the most *we* will pay regardless of the number of:

    a.  *insureds*;

    b.  claims made; or

    c.  *underinsured motor vehicles* involved in the accident.

### Limits – Coverage W3

1.  If there is more than one vehicle insured under this policy, the maximum limit of liability available is:

    a.  the limit applicable to the vehicle that was involved in the accident while *occupying your car*;

    b.  the limit applicable to the vehicle that was replaced while *occupying* a *newly acquired car* that replaces *your car*; or

    c.  the limit applicable to any one vehicle insured under this policy while injured as a *pedestrian* or injured while *occupying* a *newly acquired car* that does not replace *your car*, a *temporary substitute car*, or a *non-owned car*.

2.  The limits of liability are not increased because more than one vehicle is insured under this policy.

### Nonduplication – Coverages W and W3

*We* will not pay under Underinsured Motor Vehicle Coverage any damages that have already been paid to or for the *insured*:

1.  by or on behalf of any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured*; or

2.  for *bodily injury* under Liability Coverage of any policy issued by the *State Farm Companies* to *you* or any *resident relative*.

0571

**Exclusions – Coverages W and W3**

THERE IS NO COVERAGE:

1. FOR AN *INSURED* WHO, WITHOUT *OUR* WRITTEN CONSENT, SETTLES WITH ANY *PERSON* OR ORGANIZATION WHO MAY BE LIABLE FOR THE *BODILY INJURY*;

2. FOR PAIN, SUFFERING OR OTHER NONMONETARY DAMAGES SUSTAINED BY AN *INSURED* IF THE *BODILY INJURY* IS NOT A *SERIOUS INJURY* AND THE LIMITATION OF SECTION 1731(d)(2) OF TITLE 75 OF THE PENNSYLVANIA CONSOLIDATED STATUTES APPLIES;

3. FOR AN *INSURED* WHOSE *BODILY INJURY* RESULTS FROM THE DISCHARGE OF A FIREARM;

4. TO THE EXTENT IT BENEFITS:

   a. ANY WORKERS' COMPENSATION OR DISABILITY BENEFITS INSURANCE COMPANY;

   b. A SELF-INSURER UNDER ANY WORKERS' COMPENSATION LAW, DISABILITY BENEFITS LAW, OR SIMILAR LAW; OR

   c. ANY GOVERNMENT OR ANY OF ITS POLITICAL SUBDIVISIONS OR AGENCIES;

5. FOR PUNITIVE OR EXEMPLARY DAMAGES; OR

6. FOR ANY ORDER OF RESTITUTION ISSUED BY A COURT IN A CRIMINAL PROCEEDING OR EQUITABLE ACTION.

**Exclusions – Coverage W**

THERE IS NO COVERAGE FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY* WHILE *OCCUPYING* A MOTOR VEHICLE *OWNED BY* THAT *INSURED* IF THE VEHICLE IS NOT INSURED FOR UNDERINSURED MOTOR VEHICLE COVERAGE UNDER THIS POLICY OR ANY OTHER POLICY.

**Exclusions – Coverage W3**

THERE IS NO COVERAGE FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY* WHILE *OCCUPYING* A MOTOR VEHICLE *OWNED BY YOU* OR ANY *RESIDENT RELATIVE* IF IT IS NOT *YOUR CAR* OR A *NEWLY ACQUIRED CAR*.

This exclusion does not apply to the first *person* shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured, while *occupying* a motor vehicle not *owned by* one or both of them.

**If Other Underinsured Motor Vehicle Coverage Applies – Coverage W**

1. If underinsured motor vehicle coverage for *bodily injury* is available to an *insured* from more than one policy provided by *us* or any other insurer, any coverage applicable:

   a. under this policy shall apply on a primary basis if the *insured* sustains *bodily injury* while not *occupying* a motor vehicle or trailer.

   b. to the vehicle covered under this policy which the *insured* was *occupying* when the *bodily injury* was sustained shall apply on a primary basis. Any other coverage provided by this policy shall apply on an excess basis.

   c. under this policy shall apply on an excess basis if the *insured* sustains *bodily injury* while *occupying* a vehicle other than *your car*.

2. Subject to item 1 above, if this policy and one or more other policies provide coverage for *bodily injury:*

   a. on a primary basis, *we* are liable only for our share. *Our* share is that percent of the damages payable on a primary basis that the limit of liability of this coverage bears to the total of all

26
9838A

applicable underinsured motor vehicle coverage on a primary basis.

b. on an excess basis, *we* are liable only for our share.  *Our* share is that percent of the damages payable on an excess basis that the limit of liability of this coverage bears to the total of all applicable underinsured motor vehicle coverage provided on an excess basis.

**If Other Underinsured Motor Vehicle Coverage Applies – Coverage W3**

1. If Underinsured Motor Vehicle Coverage provided by this policy and one or more other vehicle policies issued to *you* or any *resident relative* by one or more of the *State Farm Companies* apply to the same *bodily injury*, then:

   a. the Underinsured Motor Vehicle Coverage limits of such policies will not be added together to determine the most that may be paid; and

   b. the maximum amount that may be paid from all such policies combined is the single highest applicable limit provided by any one of the policies. *We* may choose one or more policies from which to make payment.

2. The Underinsured Motor Vehicle Coverage provided by this policy applies as primary coverage for an *insured* who sustains *bodily injury* while *occupying your car*.

   a. If:

      (1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Underinsured Motor Vehicle Coverage which applies to the accident as primary coverage; and

      (2) underinsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then *we* will pay the proportion of damages payable as primary that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other underinsured motor vehicle coverage that apply as primary coverage.

   b. If:

      (1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Underinsured Motor Vehicle Coverage which applies to the accident as primary coverage; and

      (2) underinsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same accident,

then the *State Farm Companies* will pay the proportion of damages payable as primary that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other underinsured motor vehicle coverage that apply as primary coverage.

3. Except as provided in 2. above, the Underinsured Motor Vehicle Coverage provided by this policy applies as excess coverage.

   a. If:

      (1) this is the only vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* that provides Underinsured Motor Vehicle Coverage which applies to the accident as excess coverage; and

      (2) underinsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

27
9838A

0573

then *we* will pay the proportion of damages payable as excess that *our* applicable limit bears to the sum of *our* applicable limit and the limits of all other underinsured motor vehicle coverage that apply as excess coverage.

b.  If:

(1) more than one vehicle policy issued to *you* or any *resident relative* by the *State Farm Companies* provides Underinsured Motor Vehicle Coverage which applies to the accident as excess coverage; and

(2) underinsured motor vehicle coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same accident,

then the *State Farm Companies* will pay the proportion of damages payable as excess that the maximum amount that may be paid by the *State Farm Companies* as determined in 1. above bears to the sum of such amount and the limits of all other underinsured motor vehicle coverage that apply as excess coverage.

**Our Payment Options – Coverages W and W3**

*We* may, at *our* option, make payment to one or more of the following:

1.  The *insured*;

2.  The *insured's* surviving spouse;

3.  A parent or guardian of the *insured*, if the *insured* is a minor or an incompetent *person*; or

4.  A *person* authorized by law to receive such payment.

## PHYSICAL DAMAGE COVERAGES

The physical damage coverages are Comprehensive Coverage, Collision Coverage, Emergency Road Service Coverage, and Car Rental and Travel Expenses Coverage.

This policy provides:

1.  Comprehensive Coverage if "D";

2.  Collision Coverage if "G";

3.  Emergency Road Service Coverage if "H";

4.  Car Rental and Travel Expenses Coverage if "R1"

to the vehicles for which the corresponding symbols and premiums are shown on the Declarations Page.

If a deductible applies to Comprehensive Coverage, then it is shown on the Declarations Page. The deductible that applies to Collision Coverage is shown on the Declarations Page.

**Additional Definitions**

*Covered Vehicle* means:

1.  *your car*;

2.  a *newly acquired car*;

3.  a *temporary substitute car*;

4.  a camper that is designed to be mounted on a pickup truck and shown on the Declarations Page;

5.  a *non-owned car* while it is:

a.  being driven by an *insured*; or

b.  in the custody of an *insured* if at the time of the *loss* it is:

(1) not being driven; or

(2) being driven by a *person* other than an *insured* and being *occupied* by an *insured*; and

0574

6. a *non-owned trailer* and a *non-owned camper* while it is being used by an *insured*;

including its parts and its equipment that are common to the use of the vehicle as a vehicle. However, parts and equipment of *trailers* and campers must be securely fixed as a permanent part of the *trailer* or camper.

*Daily rental charge* means the sum of:

1. the daily rental rate;

2. mileage charges; and

3. related taxes.

*Insured* means *you* and *resident relatives*.

*Loss* means:

1. direct, sudden, and accidental damage to; or

2. total or partial theft of

a *covered vehicle*. *Loss* does not include any reduction in the value of any *covered vehicle* after it has been repaired, as compared to its value before it was damaged.

*Loss Caused By Collision* means a *loss* caused by:

1. a *covered vehicle* hitting or being hit by another vehicle or other object; or

2. the overturning of a *covered vehicle*.

Any *loss* caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal is not a *Loss Caused By Collision*.

*Non-Owned Camper* means a camper designed to be mounted on a pickup truck that is in the lawful possession of an *insured* and that neither:

1. is *owned by*:

   a. an *insured*;

   b. any other *person* who resides primarily in *your* household; or

c. an employer of any *person* described in a. or b. above; nor

2. has been used by, rented by, or in the possession of an *insured* during any part of each of the 31 or more consecutive days immediately prior to the date of the *loss*.

*Non-Owned Trailer* means a *trailer* that is in the lawful possession of an *insured* and that neither:

1. is *owned by*:

   a. an *insured*;

   b. any other *person* who resides primarily in *your* household; or

   c. an employer of any *person* described in a. or b. above; or

2. has been used by, rented by, or in the possession of an *insured* during any part of each of the 31 or more consecutive days immediately prior to the date of the *loss*.

**Insuring Agreements**

1. **Comprehensive Coverage**

   *We* will pay:

   a. for *loss*, except *loss caused by collision*, to a *covered vehicle*; and

   b. transportation expenses incurred by an *insured* as a result of the total theft of *your car* or a *newly acquired car*. These transportation expenses are payable:

      (1) during the period that:

         (a) starts on the date *you* report the theft to *us*; and

         (b) ends on the earliest of:

            (i) the date the vehicle is returned to *your* possession in a drivable condition;

            (ii) the date *we* offer to pay *you* for the *loss* if the vehicle has not yet been recovered; or

29
9838A

(iii) the date *we* offer to pay *you* for the *loss* if the vehicle is recovered, but is a total loss as determined by *us*; and

(2) during the period that:

(a) starts on the date the vehicle is left at a repair facility if the stolen vehicle is recovered, returned to *your* possession in a drivable condition, and has unrepaired damage that resulted from the total theft; and

(b) ends on the date the vehicle is repaired.

These transportation expenses must be reported to *us* before *we* will pay such incurred expenses.

## 2. Collision Coverage

*We* will pay for *loss caused by collision* to a *covered vehicle*.

## 3. Emergency Road Service Coverage

*We* will pay the fair cost incurred by an *insured* for:

a. up to one hour of labor to repair a *covered vehicle* at the place of its breakdown;

b. towing to the nearest repair facility where necessary repairs can be made if a *covered vehicle* is not drivable;

c. towing a *covered vehicle* out of a location where it is stuck if the vehicle is on or immediately next to a public road;

d. delivery of gas, oil, battery, or tire necessary to return a *covered vehicle* to driving condition. *We* do not pay the cost of the gas, oil, battery, or tire; and

e. up to one hour of labor for locksmith services to unlock a *covered vehicle* if its key is lost, stolen, or locked inside the vehicle.

## 4. Car Rental and Travel Expenses Coverage

### a. Car Rental Expense

*We* will pay the *daily rental charge* incurred when *you* rent a *car* from a *car business* while *your car* or a *newly acquired car* is:

(1) not drivable; or

(2) being repaired

as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage.

*We* will pay the *daily rental charge* incurred during a period that:

(1) starts on the date:

(a) the vehicle is not drivable as a result of the *loss*; or

(b) the vehicle is left at a repair facility if the vehicle is drivable; and

(2) ends on the earliest of:

(a) the date the vehicle has been repaired or replaced;

(b) the date *we* offer to pay *you* for the *loss* if the vehicle is repairable but *you* choose to delay repairs; or

(c) five days after *we* offer to pay *you* for the *loss* if the vehicle is:

(i) a total loss as determined by *us*; or

(ii) stolen and not recovered.

The amount of any such *daily rental charge* incurred by *you* must be reported to *us* before *we* will pay such amount.

### b. Travel Expenses

*We* will pay expenses for commercial transportation, lodging, and meals if *your car* or a *newly acquired car* is not

30
9838A

0576

drivable as a result of a *loss* which would be payable under Comprehensive Coverage or Collision Coverage. The *loss* must occur more than 50 miles from *your* home. *We* will only pay these expenses if they are incurred by:

(1) an *insured* during the period that:

    (a) starts after the *loss* occurs; and

    (b) ends on the earlier of:

        (i) the *insured's* arrival at his or her destination or home if the vehicle is left behind for repairs; or

        (ii) the repair of the vehicle if the *insured* waits for repairs before continuing on to his or her destination or returning home; and

(2) *you*, or any *person you* choose, to travel to retrieve the vehicle and drive it to either the original destination or *your* home if the vehicle was left behind for repairs.

These expenses must be reported to *us* before *we* will pay such incurred expenses.

c. **Rental Car – Repayment of Deductible Expense**

*We* will pay the comprehensive deductible or collision deductible an *insured* is required to pay the owner of a *car* rented from a *car business*.

**Supplementary Payments – Comprehensive Coverage and Collision Coverage**

If Symbol "D" is shown on the Declarations Page and the corresponding *covered vehicle* sustains *loss* for which *we* make a payment under Comprehensive Coverage, or if Symbol "G" is shown on the Declarations Page and the corresponding *covered vehicle* sustains *loss* for which *we* make a payment under Collision Coverage, then *we* will pay reasonable expenses incurred to:

1. tow the *covered vehicle* immediately after the *loss*:

    a. for a reasonable distance from the location of the *loss* to any one repair facility chosen by an *insured* or the owner of the *covered vehicle*, if the *covered vehicle* is not drivable; or

    b. to any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*. *We* will also pay reasonable expenses incurred to tow the *covered vehicle* for a reasonable distance from this facility to any one repair facility chosen by an *insured* or the owner of the *covered vehicle*, if the *covered vehicle* is not drivable.

2. store the *covered vehicle*, if it is not drivable immediately after the *loss*, at:

    a. any one repair facility or commercial storage facility, neither of which was chosen by an *insured* or the owner of the *covered vehicle*; and

    b. any one repair facility chosen by the owner of the *covered vehicle*, and *we* determine such vehicle is a total loss.

If the owner of the *covered vehicle* consents, then *we* may move the *covered vehicle* at *our* expense to reduce storage costs. If the owner of the *covered vehicle* does not consent, then *we* will pay only the storage costs that would have resulted if *we* had moved the damaged *covered vehicle*; and

3. clean up debris from the *covered vehicle* at the location of the *loss*. The most *we* will pay to clean up the debris is $250 for any one *loss*.

**Limits and Loss Settlement – Comprehensive Coverage and Collision Coverage**

1. *We* have the right to choose to settle with *you* or the owner of the *covered vehicle* in one of the following ways:

31
9838A

a.  Pay the cost to repair the *covered vehicle* minus any applicable deductible.

    (1)  *We* have the right to choose one of the following to determine the cost to repair the *covered vehicle*:

        (a)  The cost agreed to by both the owner of the *covered vehicle* and *us*;

        (b)  A bid or repair estimate approved by *us*; or

        (c)  A repair estimate that is written based upon or adjusted to:

            (i)  the prevailing competitive price;

            (ii)  the lower of paintless dent repair pricing established by an agreement *we* have with a third party or the paintless dent repair price that is competitive in the market; or

            (iii) a combination of (i) and (ii) above.

            The prevailing competitive price means prices charged by a majority of the repair market in the area where the *covered vehicle* is to be repaired as determined by a survey made by *us*. If asked, *we* will identify some facilities that will perform the repairs at the prevailing competitive price. The estimate will include parts sufficient to restore the *covered vehicle* to its pre-loss condition.

    *You* agree with *us* that the repair estimate may include new, used, recycled, and reconditioned parts. Any of these parts may be either original equipment manufacturer parts or non-original equipment manufacturer parts.

*You* also agree that replacement glass need not have any insignia, logo, trademark, etching, or other marking that was on the replaced glass.

    (2)  The cost to repair the *covered vehicle* does not include any reduction in the value of the *covered vehicle* after it has been repaired, as compared to its value before it was damaged.

    (3)  If the repair or replacement of a part results in betterment of that part, then *you* or the owner of the *covered vehicle* must pay for the amount of the betterment.

    (4)  If *you* and *we* agree, then windshield glass will be repaired instead of replaced.

b.  Pay the actual cash value of the *covered vehicle* minus any applicable deductible.

    (1)  The owner of the *covered vehicle* and *we* must agree upon the actual cash value of the *covered vehicle*. If there is disagreement as to the actual cash value of the *covered vehicle*, then the disagreement will be resolved by appraisal upon written request of the owner or *us*, using the following procedures:

        (a)  The owner and *we* will each select a competent appraiser.

        (b)  The two appraisers will select a third competent appraiser. If they are unable to agree on a third appraiser within 30 days, then either the owner or *we* may petition a court that has jurisdiction to select the third appraiser.

        (c)  Each party will pay the cost of its own appraiser, attorneys, and expert witnesses, as well as any other expenses incurred

32
9838A

0578

by that party. Both parties will share equally the cost of the third appraiser.

(d) The appraisers shall only determine the actual cash value of the *covered vehicle*. Appraisers shall have no authority to decide any other questions of fact, decide any questions of law, or conduct appraisal on a class-wide or class-representative basis.

(e) A written appraisal that is both agreed upon by and signed by any two appraisers, and that also contains an explanation of how they arrived at their appraisal, will be binding on the owner of the *covered vehicle* and *us*.

(f) *We* do not waive any of *our* rights by submitting to an appraisal.

(2) The damaged *covered vehicle* must be given to *us* in exchange for *our* payment, unless *we* agree that the owner may keep it. If the owner keeps the *covered vehicle*, then *our* payment will be reduced by the value of the *covered vehicle* after the *loss*.

c.  Return the stolen *covered vehicle* to its owner and pay, as described in 1.a. above, for any direct, sudden, and accidental damage that resulted from the theft.

2.  The most *we* will pay for transportation expenses under Comprehensive Coverage is $25 per day subject to an aggregate limit of $750 per *loss*.

3.  The most *we* will pay for *loss* to a *non-owned trailer* or a *non-owned camper* is $2,500.

## Limits – Car Rental and Travel Expenses Coverage

### 1. Car Rental Expense

The limit for Car Rental Expense is shown on the Declarations Page under "Limit – Car Rental Expense – Each Day, Each Loss".

a.  The limit shown under "Each Day" is the most *we* will pay for the *daily rental charge*. If:

(1) a dollar amount is shown, then *we* will pay the *daily rental charge* up to that dollar amount;

(2) a percentage amount is shown, then *we* will pay that percentage of the *daily rental charge*.

b.  Subject to the "Each Day" limit, the limit shown under "Each Loss" is the most *we* will pay for Car Rental Expense incurred as a result of any one *loss*.

### 2. Travel Expenses

The most *we* will pay for Travel Expenses incurred by all *insureds* as a result of any one *loss* is $500.

### 3. Rental Car – Repayment of Deductible Expense

The most *we* will pay for Rental Car – Repayment of Deductible Expense incurred as a result of any one *loss* is $500.

### Nonduplication

*We* will not pay for any *loss* or expense under the Physical Damage Coverages for which the *insured* or owner of the *covered vehicle* has already received payment from, or on behalf of, a party who is legally liable for the *loss* or expense.

### Exclusions

THERE IS NO COVERAGE FOR:

1.  ANY *COVERED VEHICLE* THAT IS:

0579

a.  INTENTIONALLY DAMAGED; OR

b.  STOLEN

BY OR AT THE DIRECTION OF AN *IN-SURED*;

2.  ANY *COVERED VEHICLE* WHILE IT IS RENTED TO OR LEASED TO OTH-ERS BY AN *INSURED*;

3.  ANY *COVERED VEHICLE* WHILE IT IS USED TO CARRY *PERSONS* FOR A CHARGE.  This exclusion does not apply to the use of a *private passenger car* on a share-the-expense basis;

4.  ANY *COVERED VEHICLE* DUE TO:

a.  THEFT;

b.  CONVERSION;

c.  EMBEZZLEMENT; OR

d.  SECRETION

BY AN *INSURED*, A CONSIGNEE, AN AGENT OF A CONSIGNEE, OR A *PER-SON* WHO OBTAINS POSSESSION OF THE *COVERED VEHICLE* WITH THE PERMISSION OF A CONSIGNEE OR AGENT OF A CONSIGNEE;

5.  *LOSS* TO *YOUR CAR* OR A *NEWLY ACQUIRED CAR* IF AN *INSURED* VOLUNTARILY RELINQUISHES POS-SESSION OF THAT *CAR* TO A *PERSON* OR ORGANIZATION UNDER AN AC-TUAL OR PRESUMED SALES AGREEMENT;

6.  ANY *COVERED VEHICLE* TO THE EX-TENT *OUR* PAYMENT WOULD BENEFIT ANY CARRIER OR OTHER BAILEE FOR HIRE THAT IS LIABLE FOR *LOSS* TO SUCH *COVERED VEHICLE*;

7.  *LOSS* TO ANY *COVERED VEHICLE* DUE TO *FUNGI*. THIS APPLIES RE-GARDLESS OF WHETHER OR NOT THE *FUNGI* RESULT FROM A *LOSS* THAT IS PAYABLE UNDER ANY OF THE PHYSI-CAL DAMAGE COVERAGES. *WE* WILL ALSO NOT PAY FOR ANY TESTING OR

REMEDIATION OF *FUNGI*, OR ANY ADDITIONAL COSTS REQUIRED TO REPAIR ANY *COVERED VEHICLE* THAT ARE DUE TO THE EXISTENCE OF *FUNGI*;

8.  *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM:

a.  NUCLEAR REACTION;

b.  RADIATION OR RADIOACTIVE CONTAMINATION FROM ANY SOURCE; OR

c.  THE ACCIDENTAL OR INTEN-TIONAL DETONATION OF, OR RELEASE OF RADIATION FROM, ANY NUCLEAR OR RADIOAC-TIVE DEVICE;

9.  *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM THE TAKING OF OR SEIZURE OF THAT *COVERED VEHICLE* BY ANY GOVERNMENTAL AUTHORITY;

10.  *LOSS* TO ANY *COVERED VEHICLE* THAT RESULTS FROM WAR OF ANY KIND;

11.  *YOUR CAR* WHILE SUBJECT TO ANY:

a.  LIEN AGREEMENT;

b.  RENTAL AGREEMENT;

c.  LEASE AGREEMENT; OR

d.  SALES AGREEMENT

NOT SHOWN ON THE DECLARA-TIONS PAGE;

12.  ANY *NON-OWNED CAR* WHILE IT IS:

a.  BEING MAINTAINED OR USED BY ANY *PERSON* WHILE THAT *PERSON* IS EMPLOYED IN OR ENGAGED IN ANY WAY IN A *CAR BUSINESS*; OR

b.  USED IN ANY BUSINESS OR OC-CUPATION OTHER THAN A *CAR BUSINESS*.  This exclusion (12.b.) does not apply to a *private passenger car*;

34
9838A

13. ANY PART OR EQUIPMENT OF A *COVERED VEHICLE* IF THAT PART OR EQUIPMENT:

   a.  FAILS OR IS DEFECTIVE; OR

   b.  IS DAMAGED AS A DIRECT RESULT OF:

     (1) WEAR AND TEAR;

     (2) FREEZING; OR

     (3) MECHANICAL, ELECTRICAL, OR ELECTRONIC BREAKDOWN OR MALFUNCTION

    OF THAT PART OR EQUIPMENT.

This exclusion does not apply if the *loss* is the result of theft of the *covered vehicle*;

14. ANY PART OR EQUIPMENT:

   a.  THAT IS NOT LEGAL FOR USE IN OR ON THE *COVERED VEHICLE* IN THE JURISDICTION WHERE THE *COVERED VEHICLE* IS REGISTERED; OR

   b.  THE USE OF WHICH IS NOT LEGAL IN THE JURISDICTION WHERE THE *COVERED VEHICLE* IS REGISTERED BECAUSE OF HOW OR WHERE THAT PART OR EQUIPMENT IS INSTALLED IN OR ON THE *COVERED VEHICLE*.

However, if there is a legal version of the part or equipment that is necessary for the safe operation of the *covered vehicle*, then *we* will pay the cost that *we* would otherwise have paid to repair the vehicle with the legal version of the part or equipment. *We* will not pay any cost necessary to modify the vehicle for installation of the legal version of the part or equipment;

15. TIRES. This exclusion does not apply if:

   a.  *loss* is caused by missiles, falling objects, windstorm, hail, fire, explosion, earthquake, water, flood, total or partial theft, malicious mischief, vandalism, riot, civil commotion, or hitting or being hit by a bird or an animal; or

   b.  *loss caused by collision* to another part of the *covered vehicle* causes *loss* to tires;

16. REMOVABLE PRODUCTS USED FOR STORAGE OF AUDIO, VIDEO, OR OTHER DATA, INCLUDING BUT NOT LIMITED TO TAPES, DISCS, AND MEMORY CARDS, NOR IS THERE COVERAGE FOR THE RECONSTRUCTION OF DATA CONTAINED THEREIN;

17. ANY EQUIPMENT USED TO DETECT OR INTERFERE WITH SPEED MEASURING DEVICES;

18. A CAMPER, INCLUDING ITS PARTS AND ITS EQUIPMENT, THAT IS:

   a.  DESIGNED TO BE MOUNTED ON A PICKUP TRUCK;

   b.  *OWNED BY* AN *INSURED*; AND

   c.  NOT SHOWN ON THE DECLARATIONS PAGE; OR

19. ANY *COVERED VEHICLE* WHILE IT IS:

   a.  BEING PREPARED FOR, USED IN PRACTICE FOR, OR OPERATED IN ANY RACING CONTEST, SPEED CONTEST, HILL-CLIMBING CONTEST, JUMPING CONTEST, OR ANY SIMILAR CONTEST; OR

   b.  ON A TRACK DESIGNED PRIMARILY FOR RACING OR HIGH SPEED DRIVING. This exclusion does not apply if the vehicle is being used in connection with an activity other than racing, high speed driving, or any type of competitive driving.

**If Other Physical Damage Coverage or Similar Coverage Applies**

1.  If the same *loss* or expense is payable under more than one of the physical damage coverages provided by this policy, then only the one coverage that pays the most for that *loss* or expense applies.

35
9838A

2. If any of the physical damage coverages provided by this policy and one or more other policies issued to an *insured* by one or more of the *State Farm Companies* apply to the same *loss* or expense, then only one policy applies. *We* will select a policy that pays the most for the *loss* or expense.

3. The physical damage coverages provided by this policy apply as primary coverage for a *loss* to *your car*.

   If similar coverage provided by one or more sources other than the *State Farm Companies* also applies as primary coverage for the same *loss* or expense, then the *State Farm Companies* will pay the proportion of the *loss* or expense payable as primary that the maximum amount that may be paid by the *State Farm Companies* bears to the sum of such amount and the limits of all other similar coverage that applies as primary coverage.

4. Except as provided in 3. above, the physical damage coverages provided by this policy apply as excess coverage.

   If similar coverage provided by one or more sources other than the *State Farm Companies* also applies as excess coverage for the same *loss* or expense, then the *State Farm Companies* will pay the proportion of the *loss* or expense payable as excess that the maximum amount that may be paid by the *State Farm Companies* bears to the sum of such amount and the limits of all other similar coverage that applies as excess coverage.

**Financed Vehicle**

1. If a creditor is shown on the Declarations Page, then any Comprehensive Coverage or Collision Coverage provided by this policy applies to that creditor's interest in *your car*. Coverage for the creditor's interest is only provided for a *loss* that is payable to *you*.

However, if this policy is cancelled or nonrenewed, then *we* will provide coverage for the creditor's interest until *we* notify the creditor of the termination of such coverage. This coverage for the creditor's interest is only provided for a *loss* that would have been payable to *you* if this policy had not been cancelled or nonrenewed. The date such termination is effective will be at least 10 days after the date *we* mail or electronically transmit a notice of the termination to the creditor. The mailing or electronic transmittal of the notice will be sufficient proof of notice.

2. If *we* pay such creditor, then *we* are entitled to the creditor's right of recovery against *you* to the extent of *our* payment. *Our* right of recovery does not impair the creditor's right to recover the full amount of its claim.

**Our Payment Options**

1. **Comprehensive Coverage and Collision Coverage**

   a. *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle owned by you*:

      (1) *You*;

      (2) The repairer; or

      (3) A creditor shown on the Declarations Page, to the extent of its interest.

   b. *We* may, at *our* option, make payment to one or more of the following for *loss* to a *covered vehicle* not *owned by you*:

      (1) *You*;

      (2) The owner of such vehicle;

      (3) The repairer; or

      (4) A creditor, to the extent of its interest.

36
9838A

0582

2. **Emergency Road Service Coverage and Car Rental and Travel Expenses Coverage**

   *We* may, at *our* option, make payment to one or more of the following:

   a. *You*;

   b. The *insured* who incurred the expense; or

   c. Any party that provided the service for which payment is owed.

## INSURED'S DUTIES

1. **Notice to Us of an Accident or Loss**

   The *insured* must give *us* or one of *our* agents notice of the accident or *loss* as soon as reasonably possible. The notice must give *us*:

   a. *your* name;

   b. the names and addresses of all *persons* involved in the accident or *loss*;

   c. the hour, date, place, and facts of the accident or *loss*; and

   d. the names and addresses of witnesses to the accident or *loss*.

2. **Notice to Us of a Claim or Lawsuit**

   a. If a claim is made against an *insured*, then that *insured* must immediately send *us* every demand, notice, and claim received.

   b. If a lawsuit is filed against an *insured*, then that *insured* must immediately send *us* every summons and legal process received.

3. **Insured's Duty to Cooperate With Us**

   a. The *insured* must cooperate with *us* and, when asked, assist *us* in:

      (1) making settlements;

      (2) securing and giving evidence; and

      (3) attending, and getting witnesses to attend, depositions, hearings, and trials.

   b. The *insured* must not, except at his or her own cost, voluntarily:

      (1) make any payment to others; or

      (2) assume any obligation to others

      unless authorized by the terms of this policy.

   c. Any *person* or organization making claim under this policy must, when *we* require, give *us* proof of loss on forms *we* furnish. This does not apply under the First Party Coverages if *we* fail to supply the forms within 10 days after receiving the notice of claim.

4. **Questioning Under Oath**

   Under:

   a. Liability Coverage, each *insured*;

   b. First Party Coverages, Uninsured Motor Vehicle Coverages, and Underinsured Motor Vehicle Coverages, each *insured*, or any other *person* or organization making claim or seeking payment; and

   c. Physical Damage Coverages, each *insured* or owner of a *covered vehicle*, or any other *person* or organization making claim or seeking payment;

   must, at *our* option, submit to an examination under oath, provide a statement under oath, or do both, as reasonably often as *we* require. Such *person* or organization must answer questions under oath, asked by

37
9838A

anyone *we* name, and sign copies of the answers. *We* may require each *person* or organization answering questions under oath to answer the questions with only that *person's* or organization's legal representative, *our* representatives, any *person* or *persons* designated by *us* to record the questions and answers, and no other *person* present.

5. **Other Duties Under the Physical Damage Coverages**

When there is a *loss*, *you* or the owner of the *covered vehicle* must:

a. protect the *covered vehicle* from additional damage. *We* will pay any reasonable expense incurred to do so that is reported to *us*;

b. make a prompt report to the police when the *loss* is the result of theft;

c. allow *us* to:

(1) inspect any damaged property before its repair or disposal;

(2) test any part or equipment before that part or equipment is removed or repaired; and

(3) move the *covered vehicle* at *our* expense in order to conduct such inspection or testing;

d. provide *us* all:

(1) records;

(2) receipts; and

(3) invoices

that *we* request and allow *us* to make copies; and

e. not abandon the *covered vehicle* to *us*.

6. **Other Duties Under First Party Coverages, Uninsured Motor Vehicle Coverages, and Underinsured Motor Vehicle Coverages**

A *person* making claim under:

a. First Party Coverages, Uninsured Motor Vehicle Coverages, and Underinsured Motor Vehicle Coverages must notify *us* of the claim and give *us* all the details about the death, injury, treatment, and other information that *we* may need as soon as reasonably possible after the injured *insured* is first examined or treated for the injury. If the *insured* is unable to give *us* notice, then any other *person* may give *us* the required notice;

b. First Party Coverages must authorize *us* to obtain all medical bills, reports, and records. If the *person* is dead or unable to act, his or her legal representative shall give *us* the authorization;

c. Uninsured Motor Vehicle Coverages and Underinsured Motor Vehicle Coverages must:

(1) be examined as reasonably often as *we* may require by physicians chosen and paid by *us*. A copy of the report will be sent to the *person* upon written request;

(2) provide written authorization for *us* to obtain:

(a) medical bills;

(b) medical records;

(c) wage, salary, employment, tax, business, and financial information; and

(d) any other information *we* deem necessary to substantiate the claim.

If an injured *insured* is a minor, unable to act, or dead, then his or her legal representative must provide *us* with the written authorization.

If the holder of the information refuses to provide it to *us* despite the authorization, then at *our* request

38
9838A

0584

the *person* making claim or his or her legal representative must obtain the information and promptly provide it to *us*; and

(3) allow *us* to inspect the vehicle that the *insured occupied* in the accident;

(4) send *us* immediately a copy of all lawsuit papers if the *insured* files

a lawsuit against the party liable for the accident; and

d. Uninsured Motor Vehicle Coverages must report an accident, involving a motor vehicle whose owner and driver remain unknown, to the police as soon as practicable and to *us* within 30 days or as soon as practicable.

## GENERAL TERMS

### 1. When Coverage Applies

The coverages provided by this policy are shown on the Declarations Page and apply to accidents and *losses* that occur during the policy period. The policy period is shown on the Declarations Page and is for successive periods of six months each for which the renewal premium is paid. The policy period begins and ends at 12:01 AM Standard Time at the address shown on the Declarations Page.

### 2. Where Coverage Applies

The coverages provided by this policy are shown on the Declarations Page and apply to accidents and *losses* that occur:

a. in the United States of America and its territories and possessions;

b. in Canada; and

c. while a vehicle for which coverage is provided by this policy is being shipped between the ports of the United States of America, its territories, its possessions, and Canada.

### 3. Newly Owned or Newly Leased Car

If *you* want to insure a *car* newly *owned by you* with the *State Farm Companies* after that *car* ceases to be a *newly acquired car*, then *you* must either:

a. request *we* replace a *car* currently shown on the Declarations Page of this policy with the *car* newly *owned by you* and pay *us* any added amount due. If *you* make such request while this policy is in force and:

(1) before the *car* newly *owned by you* ceases to be a *newly acquired car*, then that *car* newly *owned by you* will be insured by this policy as *your car* beginning on the date the *car* newly *owned by you* is delivered to *you*. The added amount due will be calculated based on that date; or

(2) after the *car* newly *owned by you* ceases to be a *newly acquired car*, then that *car* newly *owned by you* will be insured by this policy as *your car* beginning on the date and time *you* make the request. The added amount due will be calculated based on that date; or

b. apply to the *State Farm Companies* for separate coverage to insure the *car* newly *owned by you*. Such coverage will be provided only if both the applicant and the vehicle are eligible for coverage at the time of the application.

39
9838A

4. **Changes to This Policy**

   a. **Changes in Policy Provisions**

     *We* may only change the provisions of this policy by:

      (1) issuing a revised policy booklet, a revised Declarations Page, or an endorsement; or

      (2) revising this policy to give broader coverage without an additional premium charge. If any coverage provided by this policy is changed to give broader coverage, then *we* will give *you* the broader coverage as of the date *we* make the change effective in the state of Pennsylvania without issuing a revised policy booklet, a revised Declarations Page, or an endorsement.

   b. **Change of Interest**

     (1) No change of interest in this policy is effective unless *we* consent in writing.

     (2) Except under Death, Dismemberment and Loss of Sight Coverage, if a named insured dies, then the definition of *insured* under each of the coverages provided by this policy is changed to include:

      (a) any *person* with lawful custody of *your car*, a *newly acquired car*, or a *temporary substitute car* until a legal representative is qualified; and then

      (b) the legal representative of the deceased named insured.

     This only applies while such *person* is maintaining or using *your car*, a *newly acquired car*, or a *temporary substitute car*.

     Policy notice requirements are met by mailing the notice to the deceased named insured's last known address.

   c. **Joint and Individual Interests**

     If *you* consists of more than one *person* or entity, then each acts for all to change or cancel the policy.

5. **Premium**

   a. Unless as otherwise provided by an alternative payment plan in effect with the *State Farm Companies* with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown on the most recently issued Declarations Page or Renewal Notice.

   b. The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles, and other elements that affect the premium that apply at the time of renewal.

   c. The premium for this policy may vary based upon the purchase of other insurance from the *State Farm Companies*.

   d. The premium for this policy is based upon information *we* have received from *you* or other sources. *You* must inform *us* if any information regarding the following is incorrect or incomplete, or changes during the policy period, and *you* must answer questions *we* ask regarding the following:

     (1) *Your car*, or its use, including annual mileage;

     (2) The *persons* who regularly drive *your car*, including newly licensed family members;

     (3) *Your* marital status; or

     (4) The location where *your car* is primarily garaged.

     If the above information or any other information used to determine the premium is incorrect, incomplete,

changes during the policy period, or is not provided to *us* when *we* ask, then *we* may decrease or increase the premium during the policy period. If *we* decrease the premium during the policy period, then *we* will provide a refund or a credit in the amount of the decrease. If *we* increase the premium during the policy period, then *you* must pay the amount of the increase.

6. **Renewal**

*We* agree to renew this policy for the next policy period upon payment of the renewal premium when due, unless *we* mail or deliver a nonrenewal notice or a cancellation notice as set forth in 7. and 8. below.

7. **Nonrenewal**

If *we* decide not to renew this policy:

a. because a named insured's driver's license or motor vehicle registration has been under suspension or revocation during the policy period, then at least 15 days before the end of the current policy period; or

b. for any other reason, then at least 60 days before the end of the current policy period

*we* will mail or deliver a nonrenewal notice to the most recent address provided to *us* by *you* as the policy address. The mailing of the notice will be sufficient proof of notice.

8. **Cancellation**

a. **How You May Cancel**

*You* may cancel this policy by providing to *us* advance notice of the date cancellation is effective. *We* may confirm the cancellation in writing.

b. **How and When We May Cancel**

*We* may cancel this policy by mailing or delivering a written notice to the most recent address provided to *us* by *you* as the policy address. The notice will provide the date cancellation is effective.

The mailing of the notice will be sufficient proof of notice.

(1) If *we* mail or deliver a cancellation notice:

(a) during the first 59 days following this policy's effective date; or

(b) because the premium is not paid when due or a named insured's driver's license or motor vehicle registration has been under suspension or revocation during the policy period

then the date cancellation is effective will be at least 15 days after the date *we* mail or deliver the cancellation notice.

(2) If *we* mail or deliver a cancellation notice after this policy has been in force for more than 59 days and because the insured has misrepresented or concealed facts material to *our* acceptance of the risk, then the date cancellation is effective will be at least 60 days after the date *we* mail or deliver the cancellation notice.

(3) After this policy has been in force for more than 59 days, *we* will not cancel this policy before the end of the current policy period unless:

(a) the premium is not paid when due;

(b) a named insured has had his or her driver's license or motor vehicle registration under suspension or revocation during the policy period. If *we* cancel this policy solely because a named insured's driver's license was suspended or revoked due to such named

41
9838A

insured's failure to respond to a citation, *we* will reinstate this policy to provide continuous coverage if *you* furnish to *us*, before the cancellation effective date, proof that such named insured has:

(i) responded to all citations; and

(ii) paid all fines and penalties in connection with them; or

(c) the insured has misrepresented or concealed facts material to *our* acceptance of the risk.

c. **Return of Unearned Premium**

If *you* cancel this policy, then premium may be earned on a short rate basis. If *we* cancel this policy, then premium will be earned on a pro rata basis.

Any unearned premium will be returned at the time of cancellation or within:

(1) 30 days after *we* cancel this policy; or

(2) a reasonable time after cancellation if *you* cancel this policy.

Delay in the return of any unearned premium does not affect the cancellation date.

9. **Assignment**

No assignment of benefits or other transfer of rights is binding upon *us* unless approved by *us*.

10. **Bankruptcy or Insolvency of the Insured**

Bankruptcy or insolvency of the *insured* or his or her estate will not relieve *us* of *our* obligations under this policy.

11. **Concealment or Fraud**

There is no coverage under this policy if *you* or any other *person* insured under this policy has made false statements with the intent to conceal or misrepresent any material fact or circumstance in connection with any claim under this policy.

12. **Our Right to Recover Our Payments**

Death, Dismemberment and Loss of Sight Coverage payments are not recoverable by *us*. Under all other coverages the following apply:

a. **Subrogation**

If *we* are obligated under this policy to make payment to or for a *person* or organization who has a legal right to collect from another *person* or organization, then *we* will be subrogated to that right to the extent of *our* payment.

The *person* or organization to or for whom *we* make payment must help *us* recover *our* payments by:

(1) doing nothing to impair that legal right;

(2) executing any documents *we* may need to assert that legal right; and

(3) taking legal action through *our* representatives when *we* ask.

b. **Reimbursement**

If *we* make payment under this policy and the *person* or organization to or for whom *we* make payment recovers or has recovered from another *person* or organization, then the *person* or organization to or for whom *we* make payment must:

(1) hold in trust for *us* the proceeds of any recovery; and

(2) reimburse *us* to the extent of *our* payment.

13. **Legal Action Against Us**

Legal action may not be brought against *us* until there has been full compliance with all the provisions of this policy. In addition, legal action may only be brought against *us* regarding:

42
9838A

a. Liability Coverage after the amount of damages an *insured* is legally liable to pay has been finally determined by:

    (1) judgment after an actual trial, and any appeals of that judgment if any appeals are taken; or

    (2) agreement between the claimant and *us*.

b. Uninsured Motor Vehicle Coverages and Underinsured Motor Vehicle Coverages if the *insured* or that *insured's* legal representative within two years immediately following the date of the accident:

    (1) presents either an Uninsured Motor Vehicle Coverage claim or an Underinsured Motor Vehicle Coverage claim to *us*; and

    (2) files a lawsuit in accordance with the **Deciding Fault and Amount** provision of the involved coverage.

Except as provided in c.(2) above, no other legal action may be brought against *us* relating to Uninsured Motor Vehicle Coverages or Underinsured Motor Vehicle Coverages for any other causes of action that arise out of or are related to these coverages until there has been full compliance with the provisions titled **Consent to Settlement** and **Deciding Fault and Amount**.

c. Physical Damage Coverages if the legal action relating to these coverages is brought against *us* within one year immediately following the date of the accident or *loss*.

### 14. Choice of Law

Without regard to choice of law rules, the law of the state of:

a. Pennsylvania will control, except as provided in b. below, in the event of any disagreement as to the interpretation and application of any provision in this policy; and

b. Illinois will control in the event of any disagreement as to the interpretation and application of this policy's:

    (1) Mutual Conditions provision found on the most recently issued Declarations Page, if this policy was issued by the State Farm Mutual Automobile Insurance Company; or

    (2) Participating Policy provision found on the most recently issued Declarations Page, if this policy was issued by any subsidiary or affiliate of the State Farm Mutual Automobile Insurance Company.

### 15. Severability

If any provision of this policy is held invalid or unenforceable by a court that has jurisdiction, then:

a. such provision will remain in full force to the extent not held invalid or unenforceable; and

b. all other provisions of this policy will remain valid and enforceable.

43
9838A