IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RONALD GREEN and BETTY JEAN GREEN,** : | CIVIL ACTION NO. 3:20-CV-1534 |
| : | (Judge Conner) |
| **Plaintiffs** : | |
| v. : | |
| **STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,** : | |
| **Defendant** : | |

## **MEMORANDUM**

Plaintiffs Ronald Green and Betty Jean Green advance claims for breach of contract, statutory bad faith, and loss of consortium against Defendant State Farm Mutual Automobile Insurance Company. State Farm moves to dismiss the statutory bad faith claim and Betty Jean's loss of consortium claim to the extent it seeks punitive damages pursuant to Federal Rule of Civil Procedure 12(b)(6). We will grant in part and deny in part State Farm's motion.

### I.      **Factual Background & Procedural History**

Plaintiffs are married Pennsylvania residents. (Doc. 2 ¶ 3). In 2008, Ronald entered into an insurance contract with State Farm under which he received underinsured motorist ("UIM") coverage. (See Doc. 2, Ex. A). On August 8, 2019, Ronald, a pedestrian, was struck by a vehicle. (Doc. 2 ¶ 22). Ronald suffered injuries as a result of this incident and has received medical treatment. (Id. ¶¶ 9-10). Plaintiffs allege that they will have to expend time and money "for an indefinite

time in the future" to treat Ronald's injuries, and that Ronald will suffer future wage loss. (Id. ¶¶ 10-12).

Ronald filed notice of a possible UIM claim with State Farm on September 9, 2019, and thereafter resolved his liability claim with the driver's insurance company on January 17, 2020. (See id. ¶¶ 23, 24). On January 20, 2020, plaintiffs filed their formal UIM claim along with supporting documentation, whereupon State Farm initiated an investigation. (See id. ¶¶ 26, 36). During the investigation, plaintiffs requested from State Farm: complete adjuster notes un-redacted, a list of offers made and reasons for the offers, and a list of all materials reviewed by State Farm during its evaluation of the Greens' UIM claim. (See id. ¶ 28). Smith acknowledged plaintiffs' document request on April 15, 2020, and State Farm promptly retained counsel on April 16, 2020. (See id. ¶¶ 29, 30). State Farm advised plaintiffs that certain documents would be forwarded to their attorney, but no documents were sent prior to the filing of the instant action. (Id.) Plaintiffs allege that State Farm's conduct following their notice of a potential UIM claim constitutes bad faith. (Id. ¶¶ 21-57).

Plaintiffs initially filed this action in the Court of Common Pleas of Lackawanna County before State Farm removed the action to this court and filed its motion to dismiss. The motion is fully briefed and ripe for disposition.

## II. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the

2

court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550

3

U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

## III. Discussion

### A. Statutory Bad Faith

Pennsylvania law prohibits an insurer from denying an insurance claim in bad faith. 42 PA. CONS. STAT. § 8371. To prevail on a bad-faith claim, the insured must show that the insurer (1) "did not have a reasonable basis for denying benefits under the policy" and (2) "knew of or recklessly disregarded its lack of reasonable basis in denying the claim." Amica, 656 F.3d at 179 (quoting Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. 1994)); see also Rancosky v. Wash. Nat'l Ins. Co., 170 A.3d 364, 377 (Pa. 2017). Bad faith is "any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent." Post v. St. Paul Travelers Ins. Co., 691 F.3d 500, 523 (3d Cir. 2012) (quoting Terletsky, 649 A.2d at 688). It requires more than "mere negligence or bad judgment." Id. (quoting Frog, Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, 751 n.9 (3d Cir. 1999)).

To defeat a bad-faith count, the insurer need only show that it had a "reasonable basis" for denying the insured's claim. See Post, 691 F.3d at 522 (quoting Fogel, 656 F.3d at 179). The insurer need not show that its conclusions or investigatory methods were "flawless." Turner v. State Farm Fire & Cas. Co., 260 F. Supp. 3d 419, 425 (M.D. Pa. 2017) (citing Krisa v. Equitable Life Assurance Society, 113 F. Supp. 2d 694, 704 (M.D. Pa. 2000)). In other words, an insurer need

4

only "show that it conducted a review or investigation sufficiently thorough to yield a reasonable foundation for its action."  Id.

Plaintiffs' complaint is rife with unsupported and conclusory allegations of bad faith.  (See Doc. 2 ¶¶ 39-51).  Aside from providing a timeline of events, (see id. ¶¶ 22-30), plaintiffs offer virtually no factual allegations informing the reasonableness (or unreasonableness) of State Farm's conduct.  Instead, plaintiffs provide "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555.  We need not credit these conclusory allegations at the Rule 12 stage.  See id. (citing Twombly, 550 U.S. at 555).  This deficiency is alone enough to grant State Farm's motion.  We nonetheless take up, and reject, Green's ostensible grievances, which fall into two categories: *first*, that State Farm unjustifiably declined to pay plaintiffs under the policy in a timely manner despite plaintiffs' belief that liability was clear; and *second*, that some of State Farm's conduct during the investigation amounts to bad faith.  (See Doc. 7 at 5-11; Doc. 9-2 at 7-13; Doc. 10 at 2-3).

Genuine disputes over the value of a claim are not determinative of bad faith, see Moran v. United Servs. Auto. Ass'n, No. 3:18-CV-2085, 2019 WL 626440, at *4 (M.D. Pa. Feb. 14, 2019) (collecting cases), and an insurer does not act in bad faith "merely because [it] makes a low but reasonable estimate of an insured's damages," Smith v. State Farm Mut. Auto. Ins. Co., 506 F. App'x 133, 136 (3d Cir. 2012) (nonprecedential) (quoting Johnson v. Progressive Ins. Co., 987 A.2d 781, 784 (Pa. Super. Ct. 2009)).  Furthermore, insurers need not blindly accede to an insured's demand when the value of the insured's potential recovery is in dispute.  See

5

Castillo v. Progressive Ins., No. 3:19-CV-1628, 2021 WL 963478, at *5 (M.D. Pa. Mar. 15, 2021) (Conner, J.) (citing Smith, 506 F. App'x at 137; Yohn v. Nationwide Ins. Co., No. 1:13-CV-24, 2013 WL 2470963, at *7 (M.D. Pa. June 7, 2013)).

State Farm's alleged resistance to plaintiffs' demands in this case does not alone establish a plausible bad faith claim. Indeed, the complaint avers only that: (1) plaintiffs submitted a demand letter on January 20, 2020; (2) State Farm's claims representative reviewed the demand letter and Ronald's medical file (PIP "personal injury protection" or first party benefits file); and (3) State Farm did not offer fair value of the claim as of the date of the complaint—less than five months after plaintiffs tendered their UIM demand. (Doc. 2 ¶¶ 22-30, 35). Plaintiffs fail to explain how State Farm's declination to offer plaintiffs their preferred amount—which they do not identify—rises to the level of bad faith conduct. Plaintiffs do not allege: whether or when State Farm actually extended an offer; what that offer was; when and whether plaintiffs reviewed, rejected, or countered State Farm's offer; or why that offer was unreasonable under the circumstances. See Durdach v. LM Gen. Ins. Co., No. 3:20-CV-00926, 2021 WL 84174, at *5 (M.D. Pa. Jan. 11, 2021); Clarke v. Liberty Mut. Ins. Co., No. 3:18-CV-1925, 2019 WL 522473, at *6 (M.D. Pa. Feb. 11, 2019). Plaintiffs' disagreement with an offer made by State Farm or its decision not to extend an offer, without more, does not establish a plausible claim.

Plaintiffs' charge that State Farm was dilatory in handling Ronald's claim fares no better. To show bad-faith delay, the insured must establish "the delay is attributable to the defendant, that the defendant had no reasonable basis for the actions it undertook which resulted in the delay, and that the defendant knew or

6

recklessly disregarded the fact that it had no reasonable basis to deny payment." Thomer v. Allstate Ins. Co., 790 F. Supp. 2d 360, 370 (E.D. Pa. 2011) (quoting Wiedinmyer v. Harleysville Mut. Ins. Co., No. 94–19450, 1999 WL 1324202, at *215 (Pa. Ct. Com. Pl. Aug. 5, 1999)). We are mindful that the process for resolving an insurance claim can be "slow and frustrating," Baum v. Metro. Prop. & Cas. Ins. Co., No. 2:16-CV-623, 2019 WL 4689024, at *6 (W.D. Pa. Sept. 26, 2019) (Conner, C.J.) (citing Kosierowski v. Allstate Ins. Co., 51 F. Supp. 2d 583, 590 (E.D. Pa. 1999)), but a long claims-processing period does not constitute bad faith by itself, see Thomer, 790 F. Supp. 2d at 370 (quoting Kosierowski, 51 F. Supp. 2d at 588-89). Furthermore, delay caused by a reasonable investigation or mere negligence in causing a delay does not amount to bad faith. See Shaffer v. State Farm Mut. Auto. Ins. Co., 643 F. App'x 201, 204 (3d Cir. 2016) (nonprecedential); see Walter v. Travelers Pers. Ins. Co., No. 4:12-CV-346, 2016 WL 6962620, at *6 (M.D. Pa. Nov. 29, 2016).

Plaintiffs filed their notice of a potential UIM claim in September 2019, their formal UIM demand in January 2020, and this lawsuit in June 2020. Plaintiffs claim the nine-month delay between the notice of a potential claim and the filing of this suit without a payout constitutes bad faith because liability was clear. As a threshold observation, we note several cases in our circuit holding that longer delays do not amount to bad faith if an investigation was necessary. See, e.g., Thomer, 790 F. Supp. 2d at 370-73 (holding on summary judgment that 42-month delay not bad faith); Williams v. Hartford Cas. Ins. Co., 83 F. Supp. 2d 567, 572 (E.D. Pa. 2000) (holding on summary judgment that 15-month delay not bad faith).

7

Although we have not yet proceeded to discovery, the short delay in this case—nine months from the notice of a potential claim and less than five months from the formal demand—pales in comparison.

In any event, as explained above, plaintiffs' allegations bely their assertion that liability was clear. Indeed, plaintiffs claim that a further investigation would have revealed the extent of Ronald's injuries. In other words, *had State Farm continued with its investigation*, it would have obtained the information necessary to extend a proper settlement figure. The complaint instead suggests that the parties were engaged in a deliberative process—during which they both reviewed relevant documents, retained counsel, and participated in a negotiation process—shortly before this action was filed. (See Doc. 2 ¶¶ 26-28). The complaint also suggests that at least some of this delay was attributable to plaintiffs: in April 2020, plaintiffs made their own requests for documents. (See id. ¶¶ 24-30). This request effectively extended the investigative process and entitled State Farm to time to evaluate the propriety of that request and to formulate an appropriate response. See Thomer, 790 F. Supp. 2d at 371 ("Furthermore, when Thomer did respond, she did so by providing new medical records, and was, therefore, not resuming negotiations but effectively bringing her claim back to square one."). Plaintiffs no doubt would have preferred that State Farm complete its investigation faster, but they have not pled any facts indicating that State Farm had no reasonable basis for delaying payment or continuing its investigation.

Lastly, plaintiffs take issue with State Farm's decision to review Ronald's PIP file without his permission. (See Doc. 9-2 at 11-12; Doc. 7 at 8-9). Plaintiffs imply

8

that State Farm's decision to do so violates some rule of law. However, an insurer's reasonable legal conclusion in an uncertain area of law does not constitute bad faith. See Kunji Harrisburg, LLC v. Axis Surplus Ins. Co., 447 F. Supp. 3d 303, 310 (E.D. Pa. 2020) (citing Brown v. Progressive Ins. Co., 860 A.2d 493, 501 (Pa. Super. Ct. 2004)). Neither party has pointed the court to cases discussing whether or not an insurer's unauthorized review of an insured's PIP file is unlawful.[1] Based on the court's review, it appears that insureds can request to review PIP files, but it is unclear whether permission is *required*. See Zintel v. Progressive N. Ins. Co., No. 3:09-CV-2577, 2010 WL 5230911, at *1 (M.D. Pa. Dec. 16, 2010); Brown v. Great Northern Ins. Co., No. 3:07-CV-322, 2009 WL 453218, at *1, 6 (M.D. Pa. Feb. 23, 2009); see also Kenneth v. N.J. Mfrs. Ins. Co., No. A-2898-18T3, 2020 N.J. Super. Unpub. LEXIS 609, at *2-3 (N.J. Super. Ct. App. Div. 2020). Given the apparent dearth of case law on this matter, we cannot conclude at this juncture that State Farm's decision to review Ronald's PIP file was *per se* unreasonable or sufficient to state a plausible claim of bad faith. Even if it were impermissible, plaintiffs have not offered well-pleaded facts that State Farm knowingly or recklessly disregarded this prohibition.

---

[1] State Farm cites several cases for the proposition that failure to review first-party medical files may inform the court's bad-faith investigation inquiry, not whether permission is required to review PIP files as a matter of law. (See Doc. 7 at 8 (citing Rosenthal v. Am. States Ins. Co., No. 1:18-CV-1755, 2019 WL 1354141 (M.D. Pa. Mar. 26, 2019); Barry v. Ohio Cas. Grp., No. 3:04-CV-188, 2007 WL 128878 (W.D. Pa. Jan. 12, 2007); Motorists Mut. Ins. Co. v. Musto, No. 3:05-CV-135, 2006 WL 1806002 (M.D. Pa. 2006); Thomer , 790 F. Supp. 2d 360; Pantelis v. Erie Ins. Exch., 890 A.2d 1063 (Pa. Super. Ct. 2006)).

For these reasons, we will dismiss plaintiffs' bad faith claim. We harbor doubts as to whether the deficiencies in plaintiffs' bad faith averments can be overcome with an amended complaint, but we will grant leave to amend.

### B. Punitive Damages for Loss of Consortium

State Farm separately moves to dismiss Betty Jean's loss of consortium claim to the extent it seeks punitive damages. (See Doc. 4 ¶¶ 28-29; Doc. 7 at 12-14). It contends that punitive damages are unavailable in connection with loss of consortium claims as a matter of law. (See Doc. 7 at 12-14). Loss of consortium is a standalone, derivative claim that permits a spouse to recover for "a loss of services, society, and conjugal affection of one's spouse" in certain cases. Shuker v. Smith & Nephew, PLC, 885 F.3d 760, 777-78 (3d Cir. 2018) (citing Darr Constr. Co. v. Workmen's Comp. Appeal Bd., 715 A.2d 1075, 1079-80 (Pa. 1998)). Stated differently, a plaintiff asserting a loss of consortium claim can recover injuries to one's marital expectations. See Darr, 715 A.2d at 1079-80 (citing Anchorstar v. Mack Trucks, Inc., 620 A.2d 1120, 1121-22 (Pa. 1993)); see also Cmiech v. Electrolux Home Prod., Inc., No. CIV. A. 3:07-CV-1495, 2009 WL 3103786, at *3 (M.D. Pa. Sept. 24, 2009) ("In Pennsylvania, damages for loss of consortium include the 'loss of the company, society, cooperation, affection and aid of a spouse in every conjugal relation.'").

State Farm cites this inveterate standard and asks us to draw a negative inference: because punitive damages are not identified in the oft-used standard, they are legally unrecoverable. It does not, however, cite any decision holding that punitive damages are unavailable as a matter of law in a case such as this one.

10

Given State Farm's lack of on-point authority, and this early procedural juncture, we decline to dismiss or strike Green's punitive damages request. It may of course be revisited in a later motion.

## IV. Conclusion

We will grant in part and deny in part State Farm's motion (Doc. 4) to dismiss. An appropriate order shall issue.

/S/ Christopher C. Conner
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:   May 17, 2021